220 P.3d 1248 (2009)
153 Wash.App. 394
Jack FEIL and Delaphine Feil, husband and wife; John Tontz and Wanda Tontz, husband and wife; and The Right to Farm Association Of Baker Flats, Appellants,
v.
The EASTERN WASHINGTON GROWTH MANAGEMENT HEARINGS BOARD; Douglas County; Washington State Department of Transportation; Washington State Parks and Recreation Commission; and Public Utility District No. 1 of Chelan County, Respondents.
Jack Feil and Delaphine Feil, husband and wife; John Tontz and Wanda Tontz, husband and wife; and The Right to Farm Association of Baker Flats, Appellants,
v.
Douglas County; Douglas County Board of County Commissioners; Washington State Department of Transportation; Washington State Parks and Recreation Commission; and Public Utility District No. 1 of Chelan County, Respondents.
No. 28248-1-III.
Court of Appeals of Washington, Division 3, Panel Four.
December 3, 2009.
Reconsideration Denied February 19, 2010.
*1250 Robert Clayton Rowley, James J. Klauser, Rowley & Kauser LLP, Seattle, WA, for Appellants.
Stephen Raymond Klasinski, Jerald R. Anderson, Attorney at Law, Matthew Kernutt, WA State Attorney General's Office, Olympia, WA, Martha Patricia Lantz, City of Tacoma Office of the City Attorney, James R. Schwartz, Attorney General's Office, Tacoma, WA, Steven Michael Clem, Douglas County Prosecuting Attorney, Waterville, WA, Carol A. Wardell, Chelan County Public Utility District, Wenatchee, WA, for Respondents.

PUBLISHED OPINION
SWEENEY, J.
¶ 1 This is a land use case. Douglas County approved something called a recreational overlay district to accommodate an extension of a bicycle/pedestrian trail. The recreational district will "overlay" and border agricultural land used for orchards. Area orchardists objected to the overlay district and raised a number of legal and factual challenges to the county commissioners' decision to approve the overlay. We conclude that the recreational overlay district is not an amendment to the county's comprehensive plan and that, even if it was, any challenge to *1251 the comprehensive plan comes too late. We conclude that the recreational overlay district does not run afoul of state statutes that encourage the preservation of agricultural land. And we conclude that the decision to permit the overlay is amply supported by the findings of the commissioners, including those they adopted from the hearing examiner. We therefore affirm the decision of the superior court that dismissed the challenges of the orchardists to the recreational overlay district.

FACTS
¶ 2 The Washington State Parks and Recreation Commission (State Parks) applied to Douglas County (County) for a permit to build a five-mile, non-motorized recreation trail along the Columbia River in the Baker Flats area of East Wenatchee, Washington. The proposed trail will link with a current trail system and extend a bicycle and pedestrian path. All of the trail will be built on public property, including a right-of-way owned by the Washington State Department of Transportation and property owned by the Chelan County Public Utility District No. 1. The Greater East Wenatchee Area Comprehensive Plan designates the property over which the trail will run as "Tourist Recreation Commercial," "Residential Low," "Commercial Agriculture 5 acres," and "Commercial Agriculture 10 acres." Clerk's Papers (CP) at 1-6626, 1-6658. Trail systems are permitted in the tourist recreation district and are also allowed in districts zoned residential low, commercial agriculture 5, and commercial agriculture 10 under a recreational overlay district permit.
¶ 3 Orchardists Jack and Delaphine Feil and John and Wanda Tontz lease portions of the Baker Flats public properties that abut their orchards and they grow fruit trees on those public lands. The proposed trail, including a 10-foot-wide asphalt top plus gravel edging, and 60 to 100 foot buffers would require that nearly 24 acres of mature fruit trees be removed.
¶ 4 In 2004, a County hearing examiner concluded that the trail was permitted in all zoning districts as a "transportation facility" and issued a shoreline development permit to State Parks. The Feils, the Tontzes, and the Right to Farm Association of Baker Flats (we will refer to them as the Orchardists) appealed the decision to issue the permit to the shoreline hearings board. C.F. McNeal, Betty McNeal, and others filed a petition under the Land Use Petition Act (LUPA) in superior court and challenged the decision to issue the permit. In March 2005, the shoreline hearings board approved the trail permit subject to conditions. The Orchardists then petitioned the superior court for further review. The court affirmed the shoreline hearings board's decision. The Orchardists appealed that decision to this court but later abandoned that appeal. The superior court on the LUPA petition disagreed with the examiner's conclusion that the trail was a transportation facility (that would be permitted in any zone) and reversed. The court remanded with directions to State Parks to apply for permits required by the County code.
¶ 5 In March 2006, State Parks then applied for a recreational overlay district permit. A recreational overlay district does not change the underlying zoning. It allows recreational activities in other zoning classifications. In November 2006, the County hearing examiner held a hearing, granted the recreational overlay designation, and issued a site plan development permit for the trail. The hearing examiner conditioned approval of the permit on a number of conditions. The examiner required that State Parks provide: (1) an agreement with beekeepers to mitigate contact between trail users and bees; (2) a trail design that will minimize "frost pockets" affecting the abutting orchards; and (3) additional steps to ensure that trail users are protected from agricultural activities (such as pesticide application) and that the orchards are protected from the trail users.
¶ 6 In November 2006, the Orchardists petitioned under LUPA to the superior court and challenged the hearing examiner's authority to issue a recreational overlay permit. They also petitioned for review with the Eastern Washington Growth Management Hearings Board (Hearings Board) and argued that the hearing examiner's decision to grant the overlay violated the Growth Management Act (GMA). In February 2007, the Hearings Board concluded that it had no *1252 jurisdiction to review this permit, since it was a site-specific project, and dismissed the Orchardists' GMA petition. The Orchardists appealed that decision to the superior court; the court affirmed the dismissal of the GMA petition in July 2007. The court also concluded that the recreational overlay designation amounted to a rezone and therefore the County hearing examiner did not have authority to grant the permit because the rezone required legislative action by the County commissioners. The court then remanded for further proceedings.
¶ 7 The County commissioners adopted the findings and conclusions of the hearing examiner, added some of their own, and approved the overlay district. The Orchardists again petitioned for relief under LUPA in the superior court; and they again petitioned for review by the Hearings Board. Once again, the Hearings Board ruled that it did not have jurisdiction to review a site-specific rezone and dismissed the petition. The Orchardists appealed this ruling to the superior court. The superior court affirmed the County commissioners' decision to issue the permit and dismissed the LUPA petition. The following month, the superior court dismissed the petition for review of the Hearings Board's decision.
¶ 8 Both decisions were appealed directly to the Washington State Supreme Court. That court consolidated the appeals and transferred them here for our review.

DISCUSSION

JURISDICTION OF THE HEARINGS BOARD TO PASS ON THE COMMISSIONERS' DECISION TO ISSUE A RECREATIONAL OVERLAY PERMIT
¶ 9 The Orchardists first contend that the Hearings Board erred, as did the trial court, when it concluded that it did not have authority to hear this petition because it was "site specific." They argue that the effect of this recreational overlay designation is to convert land that had been zoned agricultural into something other than agricultural in violation of the comprehensive plan and state law requiring, or at least encouraging, the preservation of agricultural land. The Orchardists agree that generally challenges to a comprehensive plan or development regulations must be made within 60 days of the decision by the Hearings Board. But here, they argue, there was no way to anticipate, under the comprehensive plan as adopted and approved, that this bicycle and pedestrian path would be approved in an agricultural zone.
¶ 10 The County responds that this is not a rezone; that it is accommodated by the current comprehensive plan and zoning regulations, whether it is a rezone or not; and that, therefore, the appropriate vehicle to challenge this land use action is a petition pursuant to LUPA. It argues that the challenge to the Hearings Board of the comprehensive plan comes too late. Woods v. Kittitas County, 162 Wash.2d 597, 614, 174 P.3d 25 (2007). The County continues that the recreational overlay is a site-specific project permit; therefore, it only requires authorization by statute and is not subject to review under the GMA. Id. at 610, 174 P.3d 25. And it urges that the permit meets the definition of a project permit application because it relates to a specific project for a specific use by a specific applicant that is authorized by existing zoning laws. RCW 36.70B.020(4); Woods, 162 Wash.2d at 613, 174 P.3d 25. Again, relying on Woods, the County urges that the superior court may review a project permit only by applying LUPA standards to decide whether the land use decision complies with a comprehensive plan and/or development regulations. Woods, 162 Wash.2d at 603, 174 P.3d 25.
¶ 11 The GMA was enacted in 1990 to stop uncoordinated, unplanned growth and the attendant threats to the environment. RCW 36.70A.010; Woods, 162 Wash.2d at 608, 174 P.3d 25. Toward that end, the legislature called for citizens, the local government, and the private sector to cooperate in "comprehensive land use planning." RCW 36.70A.010. The GMA required development of a comprehensive plan to address land use, housing, capital facilities, utilities, rural areas, and transportation. RCW 36.70A.040,.070; Skagit Surveyors & Eng'rs, LLC v. Friends of Skagit County, 135 Wash.2d 542, 547, 958 P.2d 962 (1998). This comprehensive plan must set out the governing body's general land use policy. RCW 36.70A.030(4); Woods, 162 Wash.2d at 608, 174 P.3d 25. *1253 The rural element of the comprehensive plan must permit rural development, forestry, agriculture, and a variety of rural densities. RCW 36.70A.070(5)(b).
¶ 12 Several planning goals in the GMA guide the development of a comprehensive plan and development regulations. RCW 36.70A.020; Skagit Surveyors, 135 Wash.2d at 547, 958 P.2d 962. Among these goals is the desire to "[m]aintain and enhance natural resource-based industries, including productive timber, agricultural, and fisheries industries. Encourage the conservation of ... productive agricultural lands, and discourage incompatible uses." RCW 36.70A.020(8). The comprehensive plan must designate an area for urban growth and a rural area outside the urban growth area. RCW 36.70A.110(1), .070(5)(b); Woods, 162 Wash.2d at 608-09, 174 P.3d 25.
¶ 13 To implement the policies of the comprehensive plans, counties must adopt consistent development regulations. RCW 36.70A.040(3)(d), (4)(d); Woods, 162 Wash.2d at 609, 174 P.3d 25. Development regulations are "controls placed on development or land use activities by a county or city," including zoning ordinances. RCW 36.70A.030(7). Development regulations do not include a decision to approve a project permit application, "even though the decision may be expressed in a resolution or ordinance." Id. A site-specific rezone, authorized by a comprehensive plan, requires only a project permit application. RCW 36.70B.020(4).
¶ 14 Three growth management hearings boards enforce the GMA. Woods, 162 Wash.2d at 609, 174 P.3d 25. But the jurisdiction of these boards is limited. They can decide only those petitions that challenge comprehensive plans, development regulations, or permanent amendments to comprehensive plans or development regulations for compliance with the GMA. Id.; Skagit Surveyors, 135 Wash.2d at 549, 958 P.2d 962; RCW 36.70A.280(1)(a), .302. And a petition challenging a comprehensive plan or development regulation for violation of the GMA must be filed within 60 days after publication of the comprehensive plan or development regulation. RCW 36.70A.290(2).
¶ 15 The Orchardists contend that the recreational overlay permit approved here is a zoning amendment that they may challenge as a violation of the GMA. They note that chapter 14.32 of the Douglas County Code (DCC) requires that all zoning amendments must be reviewed for consistency with the GMA. DCC 14.32.030, .040, .050. They insist that even site-specific rezones constitute zoning amendments that must comply with the GMA and cite DCC 14.32.040:
A. Types of Amendments.
1. Site-specific map amendments.
Site-specific plan map amendments apply to a limited geographical area controlled either by an individual property owner or all property owners within the designated area....
Applications for site-specific map changes should be reviewed by the planning commission at a public hearing in June. The planning commission will make a recommendation on the proposed amendments and transmit them for final action by the Board of Commissioners at the completion of the annual comprehensive plan amendment process.
DCC 14.32.040.
¶ 16 We disagree with the Orchardists. A recreational overlay district is not a zoning amendment. It is rather a special use overlay of existing zones. DCC 18.12.060. The County zoning regulations designate ten zoning districts and three overlay districts, including the recreational overlay. DCC 18.12.020. The purpose of the district overlay designation is "to implement comprehensive plan policies that identify recreational activities or special opportunities for achieving public benefits by allowing uses that differ from the specific provisions set forth within the applicable zoning district." DCC 18.12.060. These overlays "are generally applied to site specific proposals on an individual property or a group of properties." Id. The recreational overlay does not change the zoning, it allows a recreational use that is not otherwise allowed in a particular zone. Id. The commissioners did not violate the GMA by permitting this recreational overlay district in an agricultural zone.

*1254 WHETHER THE RECREATIONAL OVERLAY VIOLATES STATE LAW PROTECTING AGRILCULTURAL LAND
¶ 17 The Orchardists next contend that this recreational overlay district violates state law calculated to protect agricultural land. And this, they argue, is so whether the recreational overlay here is characterized as a site-specific rezone or simply a permitted use. We characterize this as a permitted use, for reasons we have already discussed. But it would not make any difference in the result if we were to characterize this as a site-specific rezone. RCW 36.70A.177(1) authorizes cities and counties to use "a variety of innovative zoning techniques" in agricultural areas to "conserve agricultural lands and encourage the agricultural economy." Generally, a county or city should encourage nonagricultural uses in areas with poor soils or areas that are otherwise inappropriate for agriculture. RCW 36.70A.177(1). But whether, and to what extent, this recreational overlay, or any recreational overlay, impairs the use of this land for agriculture is, first of all, a factual question easily addressed in a LUPA action. Here, there was ample testimony to support the ultimate findings that the trail was not inconsistent with the use of this land for agriculture. We discuss this evidence in the section entitled "Substantial Evidence for Facts Supporting Recreational Overlay Designation" below.
¶ 18 Second, even if the use of a recreational overlay in the agricultural zone did violate RCW 36.70A.177, the Orchardists had to bring a challenge within 60 days of adoption of a comprehensive plan that accommodated the recreational overlay designation in the first place. RCW 36.70A.290(2); Woods, 162 Wash.2d at 614, 174 P.3d 25. The court in Woods recognized the potential that legislative authorities might permit uses beyond the 60-day challenge period that appeared to violate the GMA:
Once adopted, comprehensive plans and development regulations are presumed valid. RCW 36.70A.320(1). Thus, if a project permit is consistent with a development regulation that was not initially challenged, there is the potential that both the permit and the regulation are inconsistent with the GMA. While this is problematic, the GMA does not explicitly apply to such project permits and the GMA is not to be liberally construed.
Woods, 162 Wash.2d at 614, 174 P.3d 25.
¶ 19 The Orchardists did not timely challenge the zoning regulations (ch. 18.46 DCC), as running afoul of the GMA. And that code provides for these R-O Recreational Overlay Districts that specifically include as permitted uses "Recreational trail systems." DCC 18.46.040(J).
¶ 20 The Orchardists' essential challenge here implicates the application of these regulations, not the regulations themselves. But a hearings board's jurisdiction is limited to challenges of comprehensive plans, development regulations, and amendments to comprehensive plans and development regulations. RCW 36.70A.280(1)(a), .302; Woods, 162 Wash.2d at 609, 174 P.3d 25. The Hearings Board simply "does not have jurisdiction to hear a petition alleging that a site-specific rezone violates the GMA." Woods, 162 Wash.2d at 612, 174 P.3d 25. And that is what we are dealing with here.
¶ 21 LUPA is the exclusive means for judicial review of land use decisions that are not subject to review by quasi-judicial bodies such as the hearings boards. RCW 36.70C.030; Woods, 162 Wash.2d at 610, 174 P.3d 25. We therefore conclude that the Hearings Board properly ruled that it did not have jurisdiction to decide whether the site-specific recreational overlay adopted here complied with the GMA. Woods, 162 Wash.2d at 610, 174 P.3d 25.
¶ 22 The Orchardists rely nonetheless on two cases for the proposition that a hearings board cannot allow non-farm uses in an agricultural resource area if to do so undermines the GMA mandate to conserve farm lands. Lewis County v. W. Wash. Growth Mgmt. Hearings Bd., 157 Wash.2d 488, 495-97, 139 P.3d 1096 (2006); King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 142 Wash.2d 543, 552, 14 P.3d 133 (2000). Neither case is helpful. First, each challenge in these cases apparently followed a timely challenge to adoption of development regulations and amendments to a comprehensive plan and zoning regulationwithin 60 days. Lewis County, 157 Wash.2d at *1255 495-97, 139 P.3d 1096; King County, 142 Wash.2d at 551-52, 14 P.3d 133. Second, each case addresses whether the local jurisdiction's newly adopted development regulations (Lewis County) or amendments to the comprehensive plan (King County) qualified as "innovative zoning techniques" allowed under RCW 36.70A.177(1). Lewis County, 157 Wash.2d at 506-08, 139 P.3d 1096; King County, 142 Wash.2d at 561-62, 14 P.3d 133. The recreational overlay permit here is not a new or recently-amended provision of a comprehensive plan or development regulation. Nor is it intended to be an "innovative zoning technique."
¶ 23 The trial court was correct: the Hearings Board did not have jurisdiction to pass on whether the recreational overlay permit complied with the GMA.

OVERLAY DISTRICTSITE-SPECIFICAUTHORIZED BY THE COMPREHENSIVE PLAN
¶ 24 The Orchardists next argue that the trail is not a "site-specific" rezone authorized by the comprehensive plan and does not, therefore, qualify for a project permit. They argue that a 200-foot wide corridor five miles long is hardly "site-specific." Indeed, they urge that under pre-GMA cases, a 200-foot wide, five-mile long corridor zoned differently from the land on either side could never qualify as a site-specific rezone. They also note that the County's comprehensive plan does not even mention recreational overlays.
¶ 25 The County responds that, first of all, the land use must only generally conform, not strictly conform, to the comprehensive plan, citing Woods, 162 Wash.2d at 613-14, 174 P.3d 25. And the permits here are narrowly applied. They focus on the trail surface and buffers on specific public land. The underlying zoning of the land within or adjacent to the trail does not change by the imposition of a recreational overlay district. No area-wide zoning is involved and so the permits are site-specific.
¶ 26 A site-specific rezone involves specific parties requesting a classification change for a specific tract. Id. at 611 n. 7, 174 P.3d 25. Here, there is no change to the zoning classification of land underlying or contiguous to this overlay district. And a defined trail across public land is a site-specific tract. Id.
¶ 27 Again, a site-specific rezone is a project permit under RCW 36.70B.020(4) if it is authorized by a comprehensive plan or development regulations. Woods, 162 Wash.2d at 610, 174 P.3d 25. The Orchardists contend the recreational overlay district here is not authorized by the comprehensive plan because the County's comprehensive plan does not mention recreational overlays and specifically discourages non-agricultural uses in agricultural areas. See Douglas County Countywide Comprehensive Plan § 5.2.3 (Agricultural Goals and Policies) (amended Jan. 28, 2003). CP 0-1561. But a site-specific rezone need not be expressly included in a comprehensive plan as a permitted use. The comprehensive plan is a general blueprint for land use decisions; it does not directly regulate, nor was it intended to regulate directly, site-specific land uses. Woods, 162 Wash.2d at 613, 174 P.3d 25. "Thus, a proposed land use decision must only generally conform, rather than strictly conform, to the comprehensive plan." Id. (emphasis omitted).
¶ 28 And yes, the comprehensive plan here sets out a goal to preserve, enhance, and maintain agricultural uses "to the greatest extent possible." CP at 0-1561. But the same plan also encourages the "developing trail system" in East Wenatchee as an alternative mode of transportation. CP 0-1529. It encourages the commissioners to promote public access to bodies of water through trails. And the plan encourages coordinated bicycle and pedestrian ways for access to parks and shorelines.
¶ 29 The Greater East Wenatchee Comprehensive Plan supports extension of the trail system, citing the "healthy recreation opportunities" and the "personal mobility options" that will lighten the load on the transportation systems. CP at 0-0186. And the Greater East Wenatchee Comprehensive Plan specifically states that "[t]he current trail system should be increased to extend north to connect with Lincoln Rock State Park." CP at 0-0188. We then conclude that the extension of the trail here is consistent with the policies of both the Greater East *1256 Wenatchee and Douglas County Countywide Comprehensive Plans.
¶ 30 Moreover, the recreational overlay permit for the trail is authorized by County development regulations, including DCC 18.46.010. That code section specifically provides that
[t]he purpose of the R-O recreational overlay district is to provide for the continuance of public and private parks and other outdoor recreational facilities in order to encourage the development of additional active recreational facilities in Douglas County, and to maintain adequate buffers between recreational developments and surrounding land uses.
DCC 18.46.010. The same code permits these recreational overlay districts wherever they are not prohibited. DCC 18.46.020. And they are not prohibited where they are proposed here.
¶ 31 Recreational trails are a permitted use in a recreational overlay district. DCC 18.46.040(J). And these trails are not prohibited by agricultural development regulations. See DCC 18.34.050, DCC 18.36.050. The Orchardists are correct that "pedestrian/bicycle access corridors" are discouraged in agricultural lands of long term commercial significance. DCC 18.16.150(I). But the development standards of the recreational overlay regulations ensure that an application is reviewed for its potential effect on surrounding properties, including agricultural resource lands. DCC 18.46.070.
¶ 32 We conclude then that the recreational overlay district is both site-specific and consistent with the comprehensive plans and County development regulations. Woods, 162 Wash.2d at 613, 174 P.3d 25. This recreational overlay district was properly reviewed as a project permit rather than as a rezone. RCW 36.70B.020(4).

SUBSTANTIAL EVIDENCE FOR FACTS SUPPORTING RECREATIONAL OVERLAY DESIGNATION
¶ 33 The Orchardists next contend that the County commissioners' findings used to support their decision to approve the recreational overlay are not supported by substantial evidence. The commissioners adopted the November 2006 findings and conclusions of the hearing examiner and added their own findings and conclusions. The Orchardists assign error to the hearing examiner's findings (1) that rely on the decision of the shoreline hearings board; (2) that state that the Washington State Department of Transportation was a proper applicant; (3) that fail to show authorization by the comprehensive plans; (4) that use a "mitigation" standard rather than a "protection" standard for agricultural areas; (5) that ignore buffer requirements; (6) that say that the State Environmental Policy Act (SEPA) requirements were met; and (7) that beekeepers' concerns are mitigated. They also challenge the commissioners' findings because they (8) do not consider the GMA requirements for innovative zoning techniques; (9) fail to show that alternatives to the trail site were considered or that mandatory development standards were met; and (10) approve a site plan that exceeds the scope of the recreational overlay zone.
¶ 34 We review land use decisions under LUPA. RCW 36.70C.130(1). We, like the superior court, apply the LUPA standards of review directly to the County commissioners' decision. Henderson v. Kittitas County, 124 Wash.App. 747, 752, 100 P.3d 842 (2004). The Orchardists must show that: (a) the entity that made the land use decision did not follow the correct process, unless the error was harmless; (b) the decision is an erroneous interpretation of the law, considering the deference given to local interpretation of the law; (c) the decision is not supported by substantial evidence; (d) the decision is a clearly erroneous application of the law to the facts; (e) the decision is outside the jurisdiction of the entity making the decision; or (f) the decision violates the constitutional rights of the party seeking relief. RCW 36.70C.130(1).
¶ 35 We review challenges to the factual findings that underlie the land use decision for substantial evidence. J.L. Storedahl & Sons, Inc. v. Clark County, 143 Wash.App. 920, 928, 180 P.3d 848, review denied, 164 Wash.2d 1031, 197 P.3d 1184 (2008). And, just like other challenges to factual findings that come before this court, we view the evidence in a light most favorable to the party that prevailed. Woods, 162 Wash.2d at *1257 617, 174 P.3d 25. State Parks and the County prevailed before the County commissioners and so we review the record that was before the commissioners in the light most favorable to the respondents. Id.
¶ 36 This record contains nearly 9,000 pages of administrative proceedings. It includes extensive testimony and exhibits that speak to the advantages and disadvantages of the trail extension proposed here. The hearing examiner reviewed the record after an open public hearing. And his findings are easily supported by the evidence.
¶ 37 Specifically, he correctly notes that the Greater East Wenatchee Comprehensive Plan "places significant importance on the protection of agricultural lands" and requires minimal disruption of agricultural activities. CP at 1-6628; see CP at 0-3859 ("[a]gricultural uses will be preserved, enhanced, and maintained to the greatest extent possible"). The hearing examiner lists a variety of measures that mitigate the effects on agriculture, including enhanced setbacks and buffers, gates at both ends of the agricultural area that can be closed during certain agricultural operations, fencing and additional security measures, elimination of noxious weeds, and coordination with beekeepers for trail closure during periods of peak bee activity. Certainly, a number of people testified that orchard activities were incompatible with this trail. But the hearing examiner found that "the more convincing testimony" was "that orchard activities, pedestrians and bicyclists can co-exist in the same proximity, just as they have for over 100 years." CP at 1-6629.
¶ 38 The hearing examiner's finding that State Parks complied with SEPA procedures is supported by the record and by a superior court ruling in McNeal v. Douglas County, No. 04-2-00045-6 (Douglas County Superior Court). CP at 0-1735, 0-3663, 0-7842. The superior court ruled that compliance with SEPA need not be reviewed further unless there were changes to the proposed project that would adversely affect the environment. See WAC 197-11-600(3)(b) (an environmental document may be used by an agency until there are substantial changes that would likely have a significant adverse impact). No changes in this project would prompt a new SEPA review.
¶ 39 The Orchardists also argue that the hearing examiner and the County commissioners failed to make certain necessary findings, specifically regarding compliance with the GMA and with County buffering ordinances. But, again, neither the hearing examiner nor the commissioners had jurisdiction to consider compliance with the GMA. And, therefore, they had no duty to enter findings to address GMA requirements under RCW 36.70A.177. Buffers were adequately covered in the hearing examiner's findings and attached conditions of approval. The findings refer to the buffers established in the permit application, and the application in turn promises compliance with the buffer requirements of the County code. DCC 18.46.080.
¶ 40 The Orchardists also contend the hearing examiner failed to find that construction of the trail would comply with DCC 19.18.035(2). That code section states that trail facilities must "minimize the removal of trees, shrubs, snags and important habitat features." DCC 19.18.035(2). It is calculated to protect trees and shrubs naturally growing in the area. State Parks addressed this in the permit application; no native trees will be removed from this area.
¶ 41 The Orchardists label some findings as inappropriate. Appellants' Br. at 43-47. But those findings are not relevant to the decisions of the hearing examiner and County commissioners. For example, the Orchardists contend that the hearing examiner inappropriately relied on the decision of the shoreline hearings board. Not so. The hearing examiner merely includes the shoreline development permit process in his summary of the trail permit proceedings. And the County commissioners entered several findings that express their disagreement with the superior court's conclusion that the hearing examiner had no authority to issue the trail project permit. Yet the County commissioners considered the permit as ordered.
¶ 42 The Orchardists also contend that the County commissioners should have included findings that State Parks (1) failed *1258 to study appropriate alternatives to the trail site, (2) did not comply with County regulations on buffers (DCC 18.46.070(A)), and (3) should have required the signatures of each applicant and property owner on the project application (DCC 14.06.010(B)(7)). The hearing examiner, however, included findings on each of these points. His findings were adopted by the County commissioners. He found that State Parks considered alternative routes and has proposed buffers and setbacks to minimize the impact on agriculture. The Department of Transportation is a property owner, and the Orchardists complain that the department did not sign the application as required by DCC 14.06.010(B)(7). But we find no authority to impose what we conclude is a hypertechnical reading of the code. The Department of Transportation verified that it was aware of the project and authorized the State Parks by letter to represent its interests in the application process. That is sufficient.
¶ 43 The findings here are supported by this record.

WHETHER THE SIZE OF THE TRAIL WITH BUFFERS EXCEEDS THE OVERLAY
¶ 44 The Orchardists next contend the County commissioners approved a site plan that is up to 220 feet wide, including buffers, and this exceeds the 20-foot-wide recreational overlay. They argue that approval of a recreational overlay district authorizes only the specific overlay proposed. DCC 18.46.030(A), cited by the Orchardists, states that approval of a recreational overlay application "shall be based on a specific site design authorizing only the specific development proposed, unless amended." The specific site design here includes buffers from 60- to 100-feet-wide on each side of the trail. The approved recreational overlay district did not exceed the scope of the proposed development.

WHETHER THE COMPREHENSIVE PLAN CONFLICTS WITH GENERAL LAWS OF THE STATE PROTECTING AGRICULTURAL LANDS
¶ 45 The Orchardists contend that the Douglas County Countywide and Greater East Wenatchee Comprehensive Plans and development regulations are void because they permit what the GMA prohibits: recreational zoning in an agricultural resource area of prime soil. And for that reason, the Orchardists urge that the commissioners have run afoul of article XI, section 11 of the state constitution.
¶ 46 Article XI, section 11 of the state constitution allows local governments to adopt regulations that are not in conflict with general law. State v. Kirwin, 165 Wash.2d 818, 825, 203 P.3d 1044 (2009). A local regulation conflicts with general law if it permits what state law forbids or forbids what state law permits. Id. An ordinance or regulation that conflicts with a statute is invalid. Id. at 826, 203 P.3d 1044.
¶ 47 The Orchardists contend that the comprehensive plans and development regulations authorizing a recreational overlay in an agricultural resource area conflict with RCW 36.70A.177. This provision of the GMA states that a county or city may use innovative techniques to conserve agricultural lands and encourage the agricultural economy. RCW 36.70A.177(1). And the statute encourages a county or city to limit nonagricultural uses to areas of poor soil or otherwise unsuited to agriculture. Id. First, these are statements of planning goals; they do not prohibit nonagricultural uses in areas of good soil. See Viking Props., Inc. v. Holm, 155 Wash.2d 112, 125, 118 P.3d 322 (2005) (the GMA is a framework that guides local jurisdictions in the formation of comprehensive plans and development regulations). County regulations that establish recreational overlay districts in agricultural areas do not then permit a land use that is prohibited by the GMA. Second, any potential interference with use of this land as agricultural can be, and was, addressed here with conditions and limitations imposed as part of the approval process. Accordingly, neither the development regulations nor the comprehensive plans here are constitutionally invalid. Kirwin, 165 Wash.2d at 826, 203 P.3d 1044.

ATTORNEY FEES
¶ 48 Both the County and State Parks request attorney fees and costs pursuant to RCW 4.84.370. The statute mandates fees and costs to the prevailing party or substantially prevailing party on appeal of a *1259 decision to issue, condition, or deny a development permit involving a site-specific rezone. RCW 4.84.370(1). An award under this statute is limited, however, to a prevailing party on appeal who was the prevailing party or substantially prevailing party in all prior judicial proceedings. RCW 4.84.370(1)(b).
¶ 49 The Orchardists note that State Parks and the County did not prevail in previous judicial proceedings. The superior court reversed the hearing examiner's approval of the trail as a transportation facility and reversed the hearing examiner's grant of the recreational overlay. In both cases, the court concluded that the hearing examiner did not have authority to make those decisions. Eventually, State Parks and the County obtained the recreational overlay permit and site plan approval from the County commissioners. State Parks and the County prevailed in the September 2008 superior court review of the recreational overlay resolution and in the October 2008 superior court review of the Hearings Board's dismissal of the petition for review.
¶ 50 The appeal before this court is limited to the Orchardists' challenges to the County commissioners' resolution. State Parks and the County are then the prevailing parties and are entitled to the attorney fees and costs on appeal.
¶ 51 We affirm the decisions of the superior court that dismissed the challenges of the Orchardists to the recreational overaly district.
WE CONCUR: SCHULTHEIS, C.J., and KORSMO, J.