[No. 84369-4. En Banc.]

Argued March 8, 2011. Decided August 18, 2011.

JACK FEIL ET AL., *Petitioners*, v. THE EASTERN WASHINGTON GROWTH MANAGEMENT HEARINGS BOARD ET AL., *Respondents*.

JACK FEIL ET AL., *Petitioners*, v. DOUGLAS COUNTY ET AL., *Respondents*.

*Robert C. Rowley* and *James J. Klauser* (of *Rowley & Klauser LLP*), for petitioners.

*Steven M. Clem, Douglas County Prosecuting Attorney*; *Robert M. McKenna, Attorney General, James R. Schwartz, Senior Counsel*, and *G. Marc Worthy* and *Stephen R. Klasinski, Assistants*; *Matthew Kernutt* (of *Owens Davies Fristoe Taylor & Schultz*); and *Carol A. Wardell* (of *Chelan County Public Utility District*), for respondents.

*Brian T. Hodges* on behalf of Pacific Legal Foundation, Washington Farm Bureau, Adams County Farm Bureau, Chelan-Douglas County Farm Bureau, Clark-Cowlitz County Farm Bureau, Franklin County Farm Bureau, Grant County Farm Bureau, Lewis County Farm Bureau, Mason-Kitsap County Farm Bureau, Okanogan County Farm Bureau, Skagit County Farm Bureau, Snohomish County Farm Bureau, Stevens County Farm Bureau, Thurston County Farm Bureau, Whatcom County Farm Bureau, Whitman County Farm Bureau, Yakima County Farm Bureau, and Building Industry Association of Washington, amici curiae.

¶1 ALEXANDER, J. — We granted review of a decision of the Court of Appeals affirming the Douglas County Superior Court's dismissal of a challenge by individual orchardists and a farm association to the issuance of development permits to the Washington State Parks and Recreation Commission for construction of a pedestrian and bike trail. We affirm the Court of Appeals.

I

## A. *Factual History*

¶2 In 1997, a planning and permitting process began for the proposed Rocky Reach Trail project in the Baker Flats area of East Wenatchee. Eventually, the Washington State Parks and Recreation Commission (Parks) sought and obtained approval from Douglas County (County) to develop the trail, which will generally follow the north-south oriented eastern shore of the Columbia River, starting at the Odabashian Bridge in East Wenatchee and continuing north 5.1 miles to Lincoln Rock State Park. The proposed 10-foot-wide asphalt trail with approximately 100-foot buffers on both sides will link to an existing bicycle and pedestrian path.

¶3 Rocky Reach Trail will be developed entirely on property that is owned by Public Utility District No. 1 of Chelan County (PUD), on which Washington State Department of Transportation (WSDOT) has a right-of-way. The trail will traverse zoning districts designated as "Tourist Recreational Commercial (C-TR), Residential Low (R-L),

Commercial Agriculture 5 acres (AC-5), and Commercial Agricultur[e] 10 acres (AC-10)." Clerk's Papers, *Feil v. Douglas County*, No. 08-2-00151-0 (Douglas County Super. Ct., Wash.) (CP) at 1-6626.

¶4 Orchardists Jack and Delaphine Feil and John and Wanda Tontz, and members of the Right to Farm Association of Baker Flats (collectively the Orchardists) own property abutting the proposed trail location. Although the Orchardists do not own any of the land on which the trail will be located, they do lease a portion of that land from WSDOT.[1] If the trail is developed as proposed, some mature fruit trees may have to be removed from WSDOT's right-of-way. How many trees may have to be removed is in dispute.

## B. *Procedural History*

¶5 In 2001, Parks, together with WSDOT and the United States Department of Transportation Federal Highway Administration, submitted to the County a "National Environmental Policy Act . . . Finding Of No Significant Impact" and a "State Environmental Policy Act (SEPA) Determination of Nonsignificance (DNS) and Notice of Adoption." CP at 0-605. Parks, citing RCW 43.21C.030(2)(c), opted to adopt the DNS in place of an independent SEPA assessment. Two years later, Parks submitted to the County a permit application to develop the trail as a transportation facility. In 2004, a county hearing examiner approved the permit.

¶6 Shortly thereafter, C.F. and Betty McNeal,[2] together with the parties designated herein as the Orchardists, filed a petition under the Growth Management Act (GMA),

---

[1] Counsel for the Orchardists indicated at oral argument that if Rocky Reach Trail is developed, then the annual lease agreements between WSDOT and the Orchardists will not be renewed. Wash. Supreme Court oral argument, *Feil v. E. Wash. Growth Mgmt. Hearings Bd.*, No. 84369-4 (Mar. 8, 2011), at 2 min., 38 sec. and 18 min., 40 sec., *audio recording by* TVW, Washington State's Public Affairs Network, *available at* www.tvw.org.

[2] The McNeals are not parties to the case presently before us.

chapter 36.70A RCW, with the Washington State Shorelines Hearings Board, seeking review of the issuance of the substantial development permit under the Shoreline Management Act of 1971, chapter 90.58 RCW, and the adequacy of the SEPA review process. In March 2005, the shorelines hearings board concluded that it was without jurisdiction to decide whether the proposed project complied with the County's GMA plans and regulations and, accordingly, it affirmed the County's decision to issue the substantial development permit. That decision was appealed to Douglas County Superior Court, which entered an order affirming the shorelines hearings board. Although the Orchardists sought review of that decision in the Court of Appeals, they appear to have abandoned the appeal. Thus, the shorelines hearings board's decision is final.

¶7 At about the same time the McNeals filed the 2004 GMA petition, they filed a petition pursuant to the Land Use Petition Act (LUPA), chapter 36.70C RCW, challenging the hearing examiner's decision to approve the permit. In September 2005, the Douglas County Superior Court reversed the hearing examiner's decision and remanded to Douglas County in order to enable Parks "to apply for and obtain permits as may be required by the Douglas County Code." CP at 0-6437. The court's ruling was based on its conclusion that Parks was required to apply for a recreational overlay (R-O) district permit because the Rocky Reach Trail project included both transportation and recreational uses. Parks then filed a consolidated application with the County to establish an R-O district and to obtain a site development permit for Rocky Reach Trail.

¶8 In November 2006, a county hearing examiner issued a decision approving the application to develop the trail as an R-O district subject to a number of mitigation conditions on the project. Specifically, the hearing examiner required Parks to (1) enter into an agreement with local beekeepers to mitigate contact between trail users and bees; (2) implement a trail design that will minimize "frost pockets"

affecting the abutting orchards; and (3) take additional steps to ensure that trail users are protected from agricultural activities, such as pesticide application, and that orchards are protected from trail users. *Id.* at 0-6451, 0-6452.

¶9 After the hearing examiner issued that decision, the Orchardists sought review of the decision in three separate actions. The Orchardists first requested that the Douglas County Board of County Commissioners refer the hearing examiner's decision to the Douglas County Regional Planning Commission. The Board of County Commissioners declined to do so, concluding it did not have jurisdiction to review the hearing examiner's decision.

¶10 The Orchardists then filed a petition for review with the Eastern Washington Growth Management Hearings Board (EWGMHB), asserting that the county hearing examiner's decision to approve the trail permit violated the GMA. In February 2007, the EWGMHB concluded that it lacked jurisdiction to review the permit because Rocky Reach Trail is a site-specific project and, in any event, the challenge was untimely filed. Accordingly, the EWGMHB dismissed the Orchardists' GMA petition. The Orchardists appealed that decision to the Douglas County Superior Court, which in July 2007 affirmed the EWGMHB's dismissal of the GMA petition.

¶11 The Orchardists petitioned under LUPA, to the Douglas County Superior Court, challenging the hearing examiner's authority to issue the R-O district permit on the basis that issuing the permit amounted to a rezone of the land from AC-5 and AC-10 to a recreational purpose. The superior court remanded the case to the Board of County Commissioners for further proceedings, determining that there were possible conflicts between agriculture and recreation purposes under the GMA and that the question of whether the R-O district amounted to a rezone should be decided by "the County legislative authority." *Id.* at 0-6465. In denying Parks' motion for reconsideration, the superior

court clarified that it "found the [R-O] to be a rezone" and that it should be processed as such by the Board of County Commissioners. *Id.* at 0-6467. On remand, the Board of County Commissioners adopted the findings of fact and conclusions of law of the hearing examiner and incorporated those findings and conclusions as its own, thereby affirming the decision to approve the Rocky Reach Trail application subject to the above-mentioned mitigation conditions set by the hearing examiner in 2006. CP, *Feil v. E. Wash. Growth Mgmt. Hearings Bd.*, No. 08-2-00311-3 (Douglas County Super. Ct., Wash. Oct. 14, 2008) at 0-286.

¶12 In April 2008, the Orchardists again petitioned the EWGMHB, this time seeking review of the Board of County Commissioners' order authorizing development of the trail. The EWGMHB determined that it did not have subject matter jurisdiction under the GMA to review the petition and, consequently, dismissed it. The Orchardists then petitioned the Douglas County Superior Court for review of that decision and alleged, additionally, that Parks failed to comply with SEPA requirements. Also in April 2008, the Orchardists petitioned Douglas County Superior Court for LUPA review of the Board of County Commissioners' decision affirming the hearing examiner's approval of the permit. The superior court concluded that the Orchardists failed to meet their burden of proof in the LUPA action and dismissed the action with prejudice, awarding statutory costs and fees to Parks. The superior court also affirmed the EWGMHB's dismissal of the GMA petition.

¶13 In November 2008, the Orchardists sought direct review in this court of the superior court's decisions in the LUPA and GMA actions. We consolidated the cases and transferred the matter to the Court of Appeals, Division Three for its review. The Court of Appeals affirmed the superior court and awarded attorney fees and costs to Parks and the County. *Feil v. E. Wash. Growth Mgmt. Hearings Bd.*, 153 Wn. App. 394, 220 P.3d 1248 (2009). The Orchardists then petitioned this court for review, and we granted

the petition.[3] *Feil v. E. Wash. Growth Mgmt. Hearings Bd.*, 169 Wn.2d 1006, 236 P.3d 205 (2010).

## II

¶14 1.   Did the Court of Appeals err in affirming the EWGMHB's determination that it did not have jurisdiction under the GMA to review the R-O district permit?

¶15 2.   Did the Court of Appeals err in concluding that the comprehensive plans and development regulations do not violate article XI, section 11 of the Washington Constitution?

¶16 3.   Did the Court of Appeals err in awarding attorney fees and costs to the County and Parks?[4]

## III

¶17 We review hearings board decisions under the Administrative Procedure Act, which places the burden of demonstrating the invalidity of agency action on the party asserting invalidity. RCW 34.05.570(1)(a); *see also King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 142 Wn.2d 543, 552, 14 P.3d 133 (2000). On appeal, we review "the *Board's* decision, not the decision of the superior court, and 'judicial review of the Board's decision is based on the record made before the Board.'" *King County*, 142 Wn.2d at 553 (quoting *Buechel v. Dep't of Ecology*, 125

---

[3] The Orchardists argued before the Court of Appeals that there was not substantial evidence to support the Board of County Commissioners' findings under LUPA; they do not raise that issue here.

[4] The Orchardists raised additional arguments in this court that, for the reasons explained, we need not address on the merits. The Orchardists contend that the County failed to comply with RCW 43.21C.030(2)(e), which imposes a duty on the County to consider alternative locations for the trail. *See* Pet. for Review at 18. The record reveals that the County studied alternatives, belying the Orchardists' contention on this point. *See* CP at 0-3106. Additionally, we decline to rule on the Orchardists' motion to strike the County's statement of additional authorities because we do not reach the issues of res judicata and collateral estoppel set forth therein.

Wn.2d 196, 202, 884 P.2d 910 (1994)). We will reverse the board's decision if the agency has erroneously interpreted or applied the law. RCW 34.05.570(3)(d); *see also King County*, 142 Wn.2d at 553.

1. *Did the Court of Appeals err in affirming the EWGMHB's determination that it did not have jurisdiction under the GMA to review the R-O district permit?*

¶18 The principal issue before us is whether the EWGMHB properly concluded that it lacked jurisdiction under the GMA to review the land use decision approving the R-O district permit. The EWGMHB came to this conclusion on the basis that the land use decision was site-specific. In doing so, it rejected the Orchardists' argument that the decision was, in effect, an amendment to the county comprehensive plan because it allows a recreational use to overlay land otherwise zoned for agricultural uses. The Court of Appeals upheld the trial court's decision affirming the EWGMHB's decision that it did not have jurisdiction to determine whether the recreational overlay permit complied with the GMA. *Feil*, 153 Wn. App. at 408. In reaching its decision, the Court of Appeals agreed with the EWGMHB that the R-O district permit was a site-specific overlay that fell outside the purview of the GMA and that the Orchardists' challenge under the GMA was not timely. *Id.* at 407-08.

¶19 We begin by addressing the scope of EWGMHB's jurisdiction. The GMA requires each county that meets certain statutory requirements, including Douglas County, to adopt its own comprehensive plan and development regulations that are "consistent with and implement the comprehensive plan." RCW 36.70A.040(3)(d), (4)(d). The County has complied with the GMA in this regard, adopting a countywide comprehensive plan and, together with the city of Wenatchee, adopting a subarea comprehensive plan for Greater East Wenatchee, both of which set forth development regulations. Under the GMA, regional hearings

boards have the authority to hear and decide petitions for review filed under the GMA that pertain to land use matters in a hearings board's regional area. *See* RCW 36.70A.250, .260. The EWGMHB has jurisdiction to consider petitions for review filed under the GMA for matters pertaining to cities and counties located "east of the crest of the Cascade mountains," which includes the Baker Flats area of East Wenatchee. RCW 36.70A.260(1)(b).

¶20 In accordance with RCW 36.70A.280(1)(a), a hearings board's authority under the GMA is limited to hearing and determining only those petitions alleging that a county is not in compliance with the requirements for development regulations or amendments adopted under RCW 36.70A.040. Significantly, the GMA expressly excludes from the definition of "development regulations" a "decision to approve a project permit application, as defined in RCW 36.70B.020, even though the decision may be expressed in a resolution or ordinance of the legislative body of the county or city." RCW 36.70A.030(7). A "project permit application" is any land use permit required by a local government for a project action, including "conditional uses, shoreline substantial development permits [or] site-specific rezones authorized by a comprehensive plan." RCW 36.70B.020(4).

¶21 In *Woods v. Kittitas County*, 162 Wn.2d 597, 174 P.3d 25 (2007), we addressed the question of whether a site-specific land use decision may be challenged under the GMA. In that case, we held that hearings boards "do not have jurisdiction to decide challenges to site-specific land use decisions because site-specific land use decisions do not qualify as comprehensive plans or development regulations." *Id.* at 610. We explained that a "challenge to a site-specific land use decision should be brought in a LUPA petition at superior court," *id.*, and we acknowledged that

> if a project permit is consistent with a development regulation that was not initially challenged, there is the potential that both the permit and the regulation are inconsistent with the

GMA. While this is problematic, the GMA does not explicitly apply to such project permits and the GMA is not to be liberally construed.

*Id.* at 614 (citing *Skagit Surveyors & Engr's, LLC v. Friends of Skagit County*, 135 Wn.2d 542, 565, 958 P.2d 962 (1998)). We then stated that our " 'role is to interpret the statute as enacted by the Legislature . . . ; we will not rewrite the [GMA]' " and concluded that "a site-specific rezone cannot be challenged for compliance with the GMA." *Id.* (alterations in original) (quoting *Skagit Surveyors*, 135 Wn.2d at 567).

¶22 The question before us, therefore, is whether the decision to approve the R-O district permit was a site-specific land use decision. If it was, the EWGMHB lacked jurisdiction to review that decision. In our view, the answer plainly lies in Douglas County Code (DCC) 18.12.060, which states that "[d]istrict overlays are generally applied to site specific proposals on an individual property or a group of properties. Not every property in which the overlay district may be applied will meet the minimum provisions and policies set forth in the comprehensive plan." That county-code section additionally provides that the "purpose of the district overlay designation established within the DCC is to implement comprehensive plan policies that identify recreational activities or special opportunities for achieving public benefits by allowing uses that differ from the specific provisions set forth within the applicable zoning district." *Id.* Moreover, the regulations in effect at the time Parks filed the permit application provided that the "R-O district is permitted within all districts . . . except where specifically prohibited within the code," and the DCC did not prohibit the establishment of an R-O district in AC-5 or AC-10 zones.[5] CP at 1-6704 (emphasis omitted). The land

---

[5] The DCC has since been amended, and it now provides that the "R-O district is permitted where approved prior to October 28, 2008. All new proposals and proposals to amend previously approved R-O districts shall be processed in accordance with DCC Chapter 18.80, Conditional Uses." DCC 18.46.020.

use decision here approved a bike and pedestrian path stretching 5.1 miles long and no more than 200 feet wide on an individual piece of property owned by PUD on which WSDOT has a right-of-way. This project, which permits application of a district overlay to a site-specific proposal on an individual property, is a site-specific land use decision. We conclude that, under the GMA statutory scheme, the EWGMHB did not erroneously interpret or misapply the law when it determined that it did not have jurisdiction to review this site-specific decision.

¶23 The Orchardists contend, however, that Washington public policy does not permit a recreational use to trump an agricultural use.[6] We readily acknowledge, as we have in prior cases, that the land use planning schemes at issue here present seemingly competing goals to preserve agricultural lands and to develop recreational opportunities.[7] The Orchardists did challenge the development regulations at issue, but their challenge came too late. The Orchardists' recourse was to file a petition with the EWGMHB within 60 days of the adoption of the regulation

---

[6] The Orchardists assert that, after our decision in *King County*, the "GMA prohibits development regulations that allow active recreational uses in Agricultural Resource Areas, at least when they are located on prime soil and interfere with the agricultural economy." Pet. for Review at 14. The Orchardists mischaracterize our holding in *King County* and take it out of context because there, unlike here, the party challenging the hearings board's decision timely did so by filing its petition within the 60-day statute of limitations set forth in the GMA.

[7] For example, the GMA requires counties to "conserve agricultural land in order to maintain and enhance the agricultural industry and to discourage incompatible uses." *King County*, 142 Wn.2d at 557 (emphasis omitted) (citing RCW 36.70A.020(8)). On the other hand, the GMA states that counties must "encourage the development of recreational opportunities." *Id.* at 558 (emphasis omitted) (citing RCW 36.70A.020(9)). The 2004 Greater East Wenatchee Comprehensive Plan, adopted under the GMA, stated that trail systems should be provided in the area and should be designed "to connect to existing or planned trail systems or designed as a looping system." CP at 0-1394. In 2006, that comprehensive plan was amended to add that the "current trail system should be increased to extend north to connect with Lincoln Rock State Park." *Id.* at 0-3811. The DCC, however, states that "[p]edestrian/bicycle access corridors shall be discouraged in areas designated as agricultural lands of long-term commercial significance." *Id.* at 1-6701 (emphasis omitted).

permitting an R-O district. *See* RCW 36.70A.290(2). After the 60-day window has expired, only LUPA challenges to the compliance of site-specific rezones with the County's comprehensive plan and development regulations can be brought, which are heard by the superior court. *Woods*, 162 Wn.2d at 616. As noted above, the Orchardists filed a LUPA petition, but the challenge was unsuccessful and the Orchardists did not ask us to review that decision of the Court of Appeals. That court, therefore, properly affirmed the trial court's decision that the EWGMHB did not have jurisdiction to pass on whether the R-O district permit complied with the GMA.

2. *Did the Court of Appeals err in concluding that the comprehensive plans and development regulations do not violate article XI, section 11 of the Washington Constitution?*

¶24 The Orchardists next contend that the development regulations permitting an R-O district to be established in AC-5 and AC-10 zones violated article XI, section 11 of the Washington Constitution. Pet. for Review at 16. Washington Constitution article XI, section 11 provides that "[a]ny county, city, town or township may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws." The Orchardists' argument is, in short, that to permit an R-O district on land zoned for agricultural purposes is to allow a local legislation decision to conflict with a general policy of the state to protect agricultural lands. In support of that argument, the Orchardists point to this court's decision in *King County*, where we stated that, although RCW 36.70A.177 provides that a county may use innovative zoning techniques in areas designated as agricultural lands, a county "may not then undermine the [GMA's] agricultural conservation mandate by adopting 'innovative [zoning techniques]' that allow the conversion of entire parcels of prime agricultural soils to an unrelated use." Pet.

for Review at 17 (emphasis omitted) (quoting *King County*, 142 Wn.2d at 561 (citing RCW 36.70A.177)). Significantly, however, the zoning decision in that case was challenged within the 60-day statute of limitations required for a petition that alleges a development regulation is not in compliance with the GMA. As we explained above, the Orchardists did not timely challenge Douglas County's adoption of the regulation that permits an R-O district "except where specifically prohibited within the code." CP at 1-6704 (emphasis omitted) (quoting former DCC 18.46.020 (1997)). Moreover, a comprehensive plan serves as " ' "guide[s]" ' " or " ' "blueprint[s]" ' " to be used in making land use decisions; we have never held that a development regulation must "strictly conform" to the GMA. *Woods*, 162 Wn.2d at 613 (alterations in original) (quoting *Citizens for Mount Vernon v. City of Mount Vernon*, 133 Wn.2d 861, 873, 947 P.2d 1208 (1997)). We cannot say that the County violated article XI, section 11 of the Washington Constitution when it approved the permit and, even if it did, as we noted in the previous section, the Orchardists' objection to that decision comes too late.

3.  *Did the Court of Appeals err in awarding attorney fees and costs to the County and Parks?*

¶25 The Orchardists contend finally that the Court of Appeals erred in awarding attorney fees and costs to the County and Parks. Under RCW 4.84.370(1), "reasonable attorneys' fees and costs shall be awarded to the prevailing party or substantially prevailing party on appeal." RCW 4.84.370(1)(b) provides that the "prevailing party on appeal was the prevailing party or substantially prevailing party in all prior judicial proceedings." Subsection (2) of that statute provides that in addition to the "prevailing party under subsection (1) of this section, the county . . . whose decision is on appeal is considered a prevailing party if its decision is upheld at superior court and on appeal." We affirm the Court of Appeals' award of attorney fees and

costs on the basis that the County and Parks have prevailed in all prior judicial proceedings in this case, including those in this court. The inquiry is not, as the Orchardists would characterize it, whether the County and Parks prevailed in every stage throughout the entire history of the Rocky Reach Trail project.

## IV

¶26 In conclusion, we affirm the Court of Appeals' decision affirming the EWGMHB's decision affirming the hearing examiner's approval of Parks' application to develop the Rocky Reach Trail as an R-O district. We also affirm the Court of Appeals' decision to grant attorney fees and costs to the County and Parks and award the County and Parks reasonable attorney fees and costs incurred in proceedings before this court.

MADSEN, C.J., and C. JOHNSON, CHAMBERS, OWENS, FAIRHURST, J.M. JOHNSON, STEPHENS, and WIGGINS, JJ., concur.

After modifications, further reconsideration denied September 30, 2011 and January 11, 2012.