IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION  II

| | |
|---|---|
| SUMMIT-WALLER COMMUNITY ASSOCIATION, NORTH CLOVER CREEK/COLLINS COMMUNITY COUNCIL, | No.  50363-8-II |
| Appellants, | |
| v. | |
| PIERCE COUNTY | UNPUBLISHED OPINION |
| Respondent, | |
| and | |
| BETHEL SCHOOL DISTRICT, SUMNER SCHOOL DISTRICT, PENINSULA SCHOOL DISTRICT, EATONVILLE SCHOOL DISTRICT, and GRAHAM MC, LLC and APOGEE CAPITAL, LLC and HIGH VALLEY INVESTMENT, LLC and TACOMA SCHOOL DISTRICT, | |
| Respondents. | |

JOHANSON, J.  —  Summit-Waller Community Association, North Clover Creek, and the

Collins Community Council (collectively the "Communities") appeal an order of the Central Puget

Sound Region Growth Management Hearings Board (Board).  The Board upheld Pierce County's

approval of an area-wide map amendment M-2 to a land use designation map in the Pierce County

Comprehensive Plan (Comprehensive Plan),[1] which redesignated eight parcels of land within the

County. The Communities argue that the Board erred as a matter of law that its order was

unsupported by substantial evidence and that the Board's decision was arbitrary and capricious.

The Communities also contend that the Board erred when it concluded that their timeliness

challenge to amendment M-2 was moot. Finally, the Communities raise some arguments here that

they did not raise before the Board, thus we do not consider them. Finding no error, we affirm.

FACTS

The Communities challenge the redesignation of eight parcels of land[2] located in an area

covered by the Comprehensive Plan. The County redesignated the land use of the eight parcels

from "Employment Center" (EC) to "High Density Residential" (HRD). Clerk's Papers (CP) at

12. The Pierce County Council (Council) approved the redesignation in amendment M-2 by

passing Ordinance No. 2015-40.

Amendment M-2 allowed an HRD land use designation for the eight parcels, which in turn

allowed "multifamily and high density single-family and two-family housing" development with

up to "25 dwelling units per acre." Administrative Record (AR) at 1894, 1892. An HRD land use

designation allows for "limited neighborhood commercial retail and service uses." AR at 1892.

---

[1] Amendment M-2 was an amendment to the Mid-County Community Plan, which is part of the Comprehensive Plan. A community plan is a local development plan that adds to, but cannot conflict with, "the Countywide Comprehensive Plan." For ease of reference, we describe amendment M-2 as an amendment to the Comprehensive Plan, rather than as an amendment to the Mid-County Community Plan.

[2] The eight parcels cover approximately 34 acres in Pierce County between Tacoma and Puyallup. The parcels are within an Urban Growth Area (UGA) boundary.

Before the amendment, the eight parcels consisted of mostly vacant property. The Communities were located in a rural separator land use designated area south of the eight parcels.

## I. 2014 AMENDMENTS TO THE PIERCE COUNTY CODE (PCC)

In 2014, the Council amended chapter 19C.10 PCC, titled "Procedures for Amendments to the Comprehensive Plan." AR at 1675. The Council adopted former PCC 19C.10.050(F) (2014), which provided that applications for amendments to the Comprehensive Plan proposed as part of the periodic update under GMA provision RCW 36.70A.130(5)(a) "shall not be subject to the application requirements of [former PCC] 19C.10.050 E [(2014)] or [former PCC] 19C.10.055 [(2009)] but shall include an analysis and recommendation pursuant to [former] PCC 19C.10.065 [(2014)]." AR at 1678. As part of the amendment to chapter 19C.10 PCC, the Council adopted former PCC 19C.10.065(A), which provided that

> [d]uring a required [Growth Management Act (GMA), ch. 36.70A RCW,] periodic update, the Planning and Land Services [(PALS)] Department shall evaluate Council-Initiated amendments based upon [a list of factors].

CP at 214. The amendments to chapter 19C.10 PCC were approved in Ordinance 2014-31s, which became effective on July 1.

## II. AMENDMENT M-2 TO THE COMPREHENSIVE PLAN

### A. APPLICATION FOR AMENDMENT M-2

On July 30, Scott Edwards, the managing member of Apogee Capital LLC and High Valley Investment LLC (collectively "Intervenors"), filed an application for amendment M-2. Amendment M-2 was an area-wide map amendment, which the County defined as "a proposed change or revision to the Comprehensive Plan Generalized Land Use Map." Former PCC 19C.10.030(A) (2005). "An Area-Wide Map amendment, unlike a parcel or site-specific land use

reclassification proposal, is of area-wide significance and includes many separate properties under various ownerships." Former PCC 19C.10.030(A).

As proposed in the application, amendment M-2 sought to amend the land use designation and zone classification for the eight parcels at issue. The application suggested that the Council approve an "Urban Center"[3] land use designation with an implementing "Community Center" (CC) zone classification. CP at 155. A CC land use designation "has as its focus a significant traffic generator around which develops a concentration of other commercial office, services, and some high-density residential development." AR at 1892.

At the time of the application, the eight parcels had an EC land use designation with an implementing Community Employment (CE) zone classification.

B. RESOLUTION R2014-94S

In September, the Council initiated a number of proposed amendments to the Comprehensive Plan as part of the "continuing review and evaluation" required under GMA provision RCW 36.70A.130. CP at 147. One such Council-initiated amendment was amendment M-2.[4] In Resolution No. R2014-94s, the resolution initiating amendment M-2, the Council directed PALS to "evaluate Council initiated amendments pursuant to [former PCC] 19C.10.065." CP at 148. The Council also noted that "all applications received for Council initiation by July 31,

---

[3] There was no Urban Center *land use* designation at the time, but there was an Urban Center *zoning category* in the Zone Classifications Table, which included a CC zone classification. Former PCC 18A.27.010 (2014).

[4] The Council initially referred to amendment M-2 as Map Amendment PA-21.

2014, were reviewed against the acceptance criteria adopted in [former PCC] 19C.10.050[(F)]" and that "applications that did not meet the criteria were removed from consideration." CP at 148.

## C. PALS INITIAL STAFF REPORT

PALS submitted a staff report to the Pierce County Planning Commission (Planning Commission) analyzing amendment M-2 based on the criteria enumerated under former PCC 19C.10.065(A). PALS (1) answered "[u]ndetermined" in response to whether there was "a community or countywide need" for amendment M-2 and whether the amendment would "provide public benefits"; (2) noted that there was infrastructure available and summarized the nearby sewers, water utilities, roads, schools, and fire district; (3) noted a physical constraint on the eight parcels that "development regulations address[ed]"; (4) noted an environmental constraint that "could generate noise impacts to adjacent properties"; (5) listed the land uses and activities on the eight parcels; (6) listed the land uses and activities on neighboring properties; and (7) concluded that amendment M-2 was "not consistent with the policies in the Comprehensive Plan for expanding an existing area designated as [CC]." CP at 130-31.

PALS also concluded that the eight parcels "may have been inappropriately [re]designated as EC" from a Mixed Use District in 2006, because the land did "not meet [Comprehensive Plan] policies for locating [EC] designations." CP at 130. Instead, PALS "question[ed] whether a *higher density residential designation* may be more appropriate as a transition into the surrounding neighborhood." CP at 130 (emphasis added). PALS' staff report indicates it recommended that the County address the "area as part of the more extensive 2015 Comprehensive Plan update." CP at 130.

5

### D. MID-COUNTY LAND USE ADVISORY COMMISSION MEETING

The Mid-County Land Use Advisory Commission (MCAC) considered amendment M-2 at a public meeting on November 4. At the meeting, MCAC noted that the eight parcels "may have been inappropriately designated as EC" because they did "not meet the standards for a concentration of commercial uses" or "criteria for [an EC]." CP at 144. Because the proposed CC designation and the existing EC designation were inappropriate, "staff was open to consideration of an alternate designation" for the eight parcels. CP at 144.

During public testimony on amendment M-2, Brynn Brady spoke as representative of the Intervenors and indicated that a land use designation permitting "multi-family development" would be satisfactory. CP at 144. Brady also noted that the Intervenors had vested applications for multi-family development that expired due to inactivity during the recession.

MCAC passed a motion to support PALS' recommendation discussed above.

### E. PLANNING COMMISSION MEETING

The Planning Commission considered amendment M-2 at a public meeting on December 4. The Planning Commission noted that the eight parcels did "not meet criteria for [a CC]" and did "not meet [the criteria for an EC] designation." CP at 168.

The Planning Commission noted that PALS would work with MCAC "as part of the Comprehensive Plan update if they want to see [the eight parcels] redesignated to a different [land use] designation more appropriate for the site, such as [HRD] . . . implemented with a[] Moderate High Density Residential (MHR) [zone] classification." CP at 168. The Planning Commission noted that the addition of an HRD land use designation and implementing MHR zone classification

"was vetted with [the] Economic Development Department[,] which agreed that [the eight parcels] may not be appropriately designated" as an EC. CP at 168.

One of the planning commissioners asked if the "additional property owners were notified of the public meeting" and "staff" responded "yes". CP at 169. However, the Planning Commission noted that neighboring property owners were notified of amendment M-2 as proposed in the application, but not that the proposal could change.

The agenda for the meeting noted that the Planning Commission would hear testimony on amendment M-2. The agenda also noted that the County would post staff reports detailing "individual proposed amendments" on its website. AR at 1699.

The Planning Commission approved a motion to have PALS "prepare an alternative recommendation to accommodate high density residential development." CP at 169.

F. PALS' MODIFIED RECOMMENDATION

PALS noted that it "reviewed [additional] information and modified its recommendation for [amendment] M-2" in errata to its initial staff report. CP at 172. PALS recommended redesignation from an EC to an HRD land use designation, along with an implementing MHR zoning classification, "as it would be more appropriate as a transition into the surrounding neighborhood." CP at 173.

PALS also recommended text amendments to the Comprehensive Plan adding the HRD designation and MHR zone. The text amendments explained that the proposed HRD designation was "intended to be composed of multi-family and high density single-family and two-family housing and limited neighborhood retail and service commercial uses" and that the proposed

"MHR zone differ[ed] from Pierce County's current HRD zone in that it d[id] not allow for commercial uses." CP at 173.

### G. PLANNING COMMISSION HEARINGS

The Communities participated in a public hearing before the Planning Commission on April 21, 2015, through their representative, Dan Haire. Haire asked the Planning Commission to reconsider its recommendation that the Council should adopt amendment M-2 with an HRD redesignation of the eight parcels. The meeting minutes do not reflect any argument by Haire that the County denied him the required public notice of the proposed redesignation from an EC to an HRD in amendment M-2.

The Planning Commission held several other public meetings on the periodic review of the Comprehensive Plan, of which amendment M-2 was a part. Although members of the Communities appeared at some of these meetings, there is no indication that the Planning Commission specifically addressed amendment M-2 at those meetings.

### H. COMMUNITIES' LETTERS

On April 28 and June 2, the Communities sent letters to the Planning Commission and the Council arguing that PALS failed to properly evaluate the criteria under former PCC 19C.10.065(A) in considering amendment M-2 and failed to adhere to the "no net loss policy" for ECs. AR at 65. The Communities did not argue that the County failed to provide them notice of amendment M-2 or denied them an opportunity to participate in the County's consideration of amendment M-2. In the letters, they mentioned that they had historically opposed an EC land use designation for the eight parcels as an inappropriate land use.

## I. Ordinance 2015-33s

If adopted, Ordinance No. 2015-33s[5] would have completed the County's periodic review of and revisions to the Comprehensive Plan under GMA provision RCW 36.70A.130. As proposed, Ordinance No. 2015-33s (1) would have repealed and replaced the County's Comprehensive Plan,[6] (2) repealed the County's Community Plans,[7] (3) amended the County's development regulations,[8] and (4) incorporated the required regulatory periodic updates.[9]

The Council's Community Development Committee held several public meetings on Ordinance No. 2015-33s during June 2015. Members of the Communities gave public testimony during some of these meetings.

The Council adopted Ordinance 2015-33s on June 30 as part of its periodic review of the Comprehensive Plan. The Pierce County Executive vetoed Ordinance 2015-33s on July 14.

## J. Ordinance 2015-40

The Council then passed Ordinance No. 2015-40 on August 11. Ordinance No. 2015-40 approved similar changes rejected in Ordinance No. 2015-33s, including approval of amendment

---

[5] The record does not include a copy of Ordinance No. 2015-33s. This description comes from the meeting minutes for the Council's public meeting on June 30. It is reasonable to infer that Ordinance No. 2015-33s included amendment M-2 because the ordinance covered the periodic update of which amendment M-2 was a part. The timing of this ordinance is relevant to the Communities' timeliness challenge under the RCW 36.70A.130(5)(a) deadline of June 30, 2015 for periodic update revisions.

[6] Title 19A PCC.

[7] Title 19B PCC.

[8] Titles 18, 18A, 18B, 18F, 18G, and 18J PCC.

[9] RCW 36.70A.130(1)(a).

M-2. The Council approved amendment M-2 as part of its periodic review and revision to the Comprehensive Plan under Ordinance No. 2015-40.

The Council made findings of fact and incorporated them into Ordinance No. 2015-40. In relation to amendment M-2, the Council found that the eight parcels were "inappropriately designated as EC" because the area was "(1) not large enough to accommodate rail spurs or heavy transportation infrastructure; (2) not connected with the business pattern of EC along 112th Street East; (3) encumbered by critical areas; and (4) surrounding incompatible uses and zoning which could limit EC use." CP at 201. The Council found that because the EC land use designation was inappropriate, the area could "be evaluated for re-designation." CP at 201.

The Comprehensive Plan amendments under Ordinance No. 2015-40 became effective on February 1, 2016.

### III. GROWTH MANAGEMENT BOARD PROCEEDINGS

The Communities challenged amendment M-2 in an administrative proceeding before the Board. They sought to invalidate Ordinance 2015-40 as inconsistent with the GMA. Apogee and High Valley intervened.

The Board consolidated the Communities' petition for review with other challenges to Ordinance No. 2015-40. James L. Halmo represented the other petitioners in the two cases the Board consolidated with the Communities' case.

### A. THE COMMUNITIES' ARGUMENTS BEFORE THE BOARD

The Communities argued that the County's approval of amendment M-2 did not comply with the following GMA provisions: RCW 36.70A.010, .020(5), and .130(1)(d) and (2). The Communities also argued that the County's approval of amendment M-2 was inconsistent with

10

certain local land use goals and PCC provisions. They did not clearly state why a violation of local policies or procedures for amendments to the comprehensive plan was a GMA violation. The thrust of their argument seemed to be that either the Comprehensive Plan or amendment M-2 was "internally inconsistent" and that amounted to a violation of RCW 36.70A.130(1)(d).[10] AR at 53.

The Communities did not argue that the County failed to provide public notice of amendment M-2 or that the County denied them the opportunity to participate in the proceedings related to amendment M-2. They also did not argue that the County's approval of amendment M-2 substantially prejudiced them.

### B. THE COUNTY'S AND INTERVENORS' ARGUMENTS BEFORE THE BOARD

The County responded that the approval of amendment M-2 was consistent with the GMA and PCC provisions cited by the Communities. It argued that the "no net loss requirement" did not apply to amendment M-2 because it "was adopted as part of the County's periodic update cycle" and because the County "evaluat[ed] the amendment using the factors identified in [former] PCC 19C.10.065[(A)]." AR at 1610. Additionally, it argued that amendment M-2 furthered the GMA's "goal of promoting a variety of residential densities and housing types . . . under RCW 36.70A.020(4)." AR at 1610. During oral argument before the Board, the following exchange occurred:

> [Intervenors' Attorney]: . . . [T]he very first time [amendment M-2] saw the light of day, the staff recommended apartments only. That then went to the planning commission in December of 2014. They agreed. And that same proposal continued until it was adopted by the council in the . . . middle of 2015. So I think

---

[10] RCW 36.70A.130(1)(d) provides that amendments and revisions to a county's comprehensive plan must conform to the GMA and that amendments or revisions to a county's development regulations must be consistent with and implement that county's comprehensive plan.

it's fair to say from the very first outing, this proposal was changed by everybody who looked at it to apartments instead of the commercial center.
     [Board Member]:  And "by everybody," did that include public notice?
     [Intervenors' Attorney]:  Yes . . . well, the staff reports and everything that would have been done in conjunction with the --
     [Board Member]:  Were published as part of a comment period?
     [Intervenors' Attorney]:  Yes, yes.

AR Transcript of Proceedings at 57.  The Communities did not contradict the Intervenors' comments about public notice and did not argue that the County failed to provide public notice of the staff reports related to amendment M-2.

## C.  THE BOARD'S FINDING OF FACTS

The Board entered the following relevant findings.

"Applications for zoning amendments received by the July 31, 2014, deadline were . . . reviewed by [PALS] against the acceptance criteria in [former] PCC 19C.10.050F."  CP at 15.  The Council "screened the PALS-accepted plan amendments through the public hearing process" before the Council initiated the amendments.  CP at 15.  Amendment M-2 "was 'initiated' by the Council in Resolution 2014-94s."  CP at 15.

MCAC considered amendment M-2 at the November 4 public meeting.  PALS advised MCAC "that the properties did not fit the proposed CC or existing EC designation and proposed an alternate designation."  CP at 15.  "PALS staff evaluated the [amendment] M-2 proposal '*based on*' the eight criteria identified in [former PCC 19C.10.065(A)]."  CP at 23.  MCAC voted to move forward on amendment M-2 "with the expectation that [PALS] would work toward an appropriate designation" to "accommodate multi-family development" on the eight parcels.  CP at 15.

PALS provided the Planning Commission with an analysis of amendment M-2 "using the factors in [former] PCC 19C.19.065[(A)]."  CP at 16.  PALS advised the Planning Commission

12

that the eight parcels "may have been inappropriately designated EC as it did not meet the criteria, nor was the proposal consistent with the [Comprehensive] Plan policies for expanding CC designation." CP at 16. PALS "suggested a 'higher density residential designation'" as an alternative for amendment M-2. CP at 16. The Planning Commission directed PALS to prepare an alternative recommendation on amendment M-2 that would "accommodate high density residential development." CP at 16.

PALS prepared a modified staff report on amendment M-2 that "included text amendments [to the Comprehensive Plan]" adding "Moderate High Density Residential designations . . . and recommended its adoption." CP at 16.

The modified version of amendment M-2 "was adopted as part of the 2015 [Comprehensive] Plan Update" in Ordinance 2015-40. CP at 16. The Council's findings of fact attached to Ordinance 2015-40 related to the approval of amendment M-2 "indicate the proposal was reviewed and that attention was given to ensuring consistency with [Comprehensive] Plan policies." CP at 24.

D. THE BOARD'S CONCLUSIONS OF LAW

The Board entered the following relevant conclusions of law.

The plain meaning of Comprehensive Plan Policy LU-56.3.1 provides an exception to the "no net loss requirement" under former PCC 19A.30.030(H) (2007) and Comprehensive Plan Policy LU-56. CP at 18. The exception to the no net loss requirement "allows the Council to redesignate EC land without replacing it with 'developable acreage'" if the County has determined that the land was "unsuitable for industrial use in the first place." CP at 18. Additionally, former

PCC 19C.10.055(C) "seeks to prevent the net loss of 'developable acreage'" as opposed to "'total acreage.'" CP at 19.

The Communities "failed to show an inconsistency between the County's development regulations and its [Comprehensive] Plan in violation of RCW 36.70A.130[(1)](d)." CP at 19. Moreover, review of Council-initiated amendments to the Comprehensive Plan under RCW 36.70A.130(5)(a), former PCC 19C.10.055(C), and former PCC 19C.10.050(E)(3) do not require that a proposed amendment "be accepted as is or rejected." CP at 23.

The plain meaning of former PCC 19C.10.065(A) did not "require[] more than a recommendation based on the review" and did not require that a "proposal must necessarily 'satisfy' each and every criterion." CP at 23. The Communities failed to show that the County did not evaluate amendment M-2 as required under former PCC 19C.10.065(A).

The Communities abandoned their arguments based on alleged violations of RCW 36.70A.010, .020(5), .130(2). The Communities also "did not allege a violation of [RCW] 36.70A.130(5)(a)." CP at 24. Even if they had alleged a violation of RCW 36.70A.130(5)(a), it would "essentially [have been] a failure to act challenge and moot" because "the County ha[d] completed its update." CP at 24.

The Communities failed to show that the Board's approval of amendment M-2 was inconsistent with the Comprehensive Plan, violated RCW 36.70A.130(1)(d), or violated the GMA generally. There was "no basis for an order of invalidity" related to amendment M-2. CP at 27. The Board "dismissed" all of the issues raised by the Communities. CP at 27-28.

14

IV. THURSTON COUNTY SUPERIOR COURT PROCEEDINGS

The Communities petitioned the Thurston County Superior Court for review of the Board's decision. The superior court affirmed.

ANALYSIS

The Communities argue that (1) the Board erroneously interpreted or applied the law, (2) substantial evidence did not support the Board's order, and (3) the Board's order was arbitrary and capricious. Br. of Appellant at 6-7. We disagree.

I. STANDARDS OF REVIEW

Washington's Administrative Procedure Act (APA), ch. 34.05 RCW, governs our review of the Board's final decision. *Whatcom County v. W. Wash. Growth Mgmt. Hr'gs Bd.*, 186 Wn.2d 648, 666, 381 P.3d 1 (2016). "On appeal, we review 'the *Board's* decision, not the decision of the superior court.'" *Feil v. E. Wash. Growth Mgmt. Hr'gs Bd.*, 172 Wn.2d 367, 376, 259 P.3d 227 (2011) (quoting *King County v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd.*, 142 Wn.2d 543, 553, 14 P.3d 133 (2000). Our review is limited to "'the record made before the Board.'" *Feil*, 172 Wn.2d at 376 (quoting *King County*, 142 Wn.2d at 553).

Under the APA, we review "the Board's legal conclusions de novo." *Whatcom County*, 186 Wn.2d at 667. However, we give "substantial weight to the Board's interpretation of the GMA." *Whatcom County*, 186 Wn.2d at 667. The challenging party bears the "burden of establishing that the Board's decision is based on an erroneous interpretation of the law." *Whatcom County*, 186 Wn.2d at 667; *King County*, 142 Wn.2d at 553; RCW 34.05.570(3)(d). "Unchallenged conclusions of law become the law of the case." *Rush v. Blackburn*, 190 Wn. App. 945, 956, 361 P.3d 217 (2015).

We review the Board's factual findings for "substantial evidence." *Kittitas County v. E. Wash. Growth Mgmt. Hr'gs Bd.*, 172 Wn.2d 144, 155, 256 P.3d 1193 (2011); *City of Redmond v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd.*, 136 Wn.2d 38, 46, 959 P.2d 1091 (1998). Evidence is substantial if, "when viewed in light of the whole record," RCW 34.05.570(3)(e), there is "'a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness'" of the finding. *Kittitas County*, 172 Wn.2d at 155 (quoting *Thurston County v. W. Wash. Growth Mgmt. Hr'gs Bd.*, 164 Wn.2d 329, 341, 189 P.3d 38 (2008)); *see also City of Redmond*, 136 Wn.2d at 46. The challenging party has the burden of showing that the Board's decision is unsupported by substantial evidence. RCW 34.05.570(1)(a).

"'On mixed questions of law and fact, we determine the law independently, then apply it to the facts as found by the [Board.]'" *Thurston County*, 164 Wn.2d at 341 (internal quotation marks omitted) (quoting *Lewis County v. W. Wash. Growth Mgmt. Hr'gs Bd.*, 157 Wn.2d 488, 498, 139 P.3d 1096 (2006)). We consider whether the Board's factual findings support its conclusions. *Kittitas County v. Kittitas County Conserv. Coal.*, 176 Wn. App. 38, 55 n.3, 308 P.3d 745 (2013).

We determine whether a Board's order is arbitrary and capricious by reviewing "whether the order represents 'willful and unreasoning action, taken without regard to or consideration of the facts and circumstances surrounding the action.'" *Kittitas County*, 172 Wn.2d at 155 (quoting *City of Redmond*, 136 Wn.2d at 46-47). "'Where there is room for two opinions, an action taken after due consideration is not arbitrary and capricious even though a reviewing court may believe it to be erroneous.'" *City of Redmond*, 136 Wn.2d at 47 (quoting *Kendall v. Douglas, Grant, Lincoln & Okanogan Counties Pub. Hosp. Dist. No. 6*, 118 Wn.2d 1, 14, 820 P.2d 497 (1991)).

## II. LEGAL PRINCIPLES

### A. THE GROWTH MANAGEMENT ACT

A purpose of the GMA is to reduce "uncoordinated and unplanned growth." RCW 36.70A.010. Under the GMA provision, Pierce County had to, among other things, (1) "adopt a countywide planning policy," (2) "adopt a comprehensive plan," and (3) adopt "development regulations that [we]re consistent with and implement[ed] the comprehensive plan." RCW 36.70A.040(3)(a), (d).

A comprehensive plan is a county's "generalized coordinated land use policy statement." RCW 36.70A.030(4). "[A] comprehensive plan serves as 'guide[s]' or 'blueprint[s]' to be used in making land use decisions." *Feil*, 172 Wn.2d at 382 (internal quotation marks omitted) (alterations in original) (quoting *Woods v. Kittitas County*, 162 Wn.2d 597, 613, 174 P.3d 25 (2007)). "Development regulations" are a county's "controls placed on development or land use activities, . . . including, but not limited to, zoning ordinances, critical areas ordinances, shoreline master programs, official controls, planned unit development ordinances, subdivision ordinances, and binding site plan ordinances," but excluding "a decision to approve a project permit application." RCW 36.70A.030(7). Development regulations need not "'strictly conform' to the GMA." *Feil*, 172 Wn.2d at 382 (quoting *Woods*, 162 Wn.2d at 613).

The GMA requires that a county's comprehensive plan and development regulations comply with the GMA's requirements. RCW 36.70A.130(1)(a), (d). It also requires that a county's development regulations be consistent with its comprehensive plan. RCW 36.70A.130(1)(a), (d).

## B. GROWTH MANAGEMENT HEARINGS BOARD

### 1. JURISDICTION

A growth management hearings board has "limited jurisdiction and may decide *only* challenges to or amendments of comprehensive plans or development regulations." *Schnitzer W., LLC v. City of Puyallup*, 190 Wn.2d 568, 575, 416 P.3d 1172 (2018). As relevant here, a Board may only determine whether the comprehensive plans or development regulations and amendments thereto comply with the GMA. *Feil*, 172 Wn.2d at 382; RCW 36.70A.280(1)(a).

### 2. PRESUMPTION OF VALIDITY AND BURDEN OF PROOF

The GMA establishes "a presumption of validity for comprehensive plans and development regulations," *Kittitas County*, 172 Wn.2d at 155, "and amendments thereto." RCW 36.70A.320(1). "[B]oards must consider anecdotal evidence provided by counties and defer to local planning decisions as between different planning choices that are compliant with the GMA." *Kittitas County*, 172 Wn.2d at 157.

A party challenging the validity of a county's comprehensive plan or development regulations may rebut the presumption of validity with "evidence that persuades a board that the action is clearly erroneous." *Kittitas County*, 172 Wn.2d at 156. The Board will review whether the county clearly erred "in view of the entire record . . . and in light of the goals and requirements of [the GMA]." *Whatcom County*, 186 Wn.2d at 667 (quoting RCW 36.70A.320(1), (3)). "To find an action clearly erroneous, the Board must be 'left with the firm and definite conviction that a mistake has been committed.'" *Whatcom County*, 186 Wn.2d at 667 (internal quotation marks omitted) (quoting *King County*, 142 Wn.2d at 552). The challenging party has the burden of

"demonstrate[ing] that any action taken by . . . a county . . . under [the GMA] is not in compliance with the requirements of [the GMA]." RCW 36.70A.320(2).

### III. ERRORS OF LAW

The Communities assign error to the Board's conclusions related to the County's evaluation of amendment M-2 against the criteria for comprehensive plan amendments set forth under former PCC 19C.10.065(A).

### A. ARGUMENTS WAIVED OR ABANDONED BELOW REGARDING COUNTY'S EVALUATION OF AMENDMENT M-2

1. RCW 36.70A.020(5) – GMA GOALS

The Communities argue that the Board erred in concluding that the County's approval of amendment M-2 complied with GMA planning goal of encouraging economic development under RCW 36.70A.020(5). The Board made no such conclusion. Instead, the Board concluded that the Communities abandoned their argument on this issue. The Communities did not assign error to that conclusion.

RCW 34.05.554(1) provides that "[i]ssues not raised before [the Board] may not be raised on appeal." "Unchallenged conclusions of law become the law of the case." *Rush*, 190 Wn. App. at 956. Thus, we do not reach the Communities' argument based on RCW 36.70A.020(5).

2. OTHER GMA PROVISIONS THE COMMUNITIES CITED WITHOUT AN ASSIGNMENT OF ERROR

The Communities also cite to several GMA provisions when discussing the County's evaluation of amendment M-2.[11] We address these provisions separately from RCW

---

[11] RCW 36.70A.010 ("Legislative findings" on the GMA, including the public interest in coordinating comprehensive land use planning and economic development.); RCW 36.70A.011 (Legislative findings on the GMA's rural lands provisions.); RCW 36.70A.020(1), (4), and (12) (GMA planning goals for urban growth, housing, and public facilities and services); RCW

36.70A.020(5) because the Communities did not include these provisions in their assignments of error, but they raise them in conclusory fashion.

"Issues not raised before [the Board] may not be raised on appeal." RCW 34.05.554(1). Additionally, a party "is deemed to have waived any issues that are not raised as assignments of error and argued by brief." *State v. Sims*, 171 Wn.2d 436, 441, 256 P.3d 285 (2011); RAP 10.3(a)(4), (g)-(h)

The Board concluded that the Communities abandoned their argument based on RCW 36.70A.010, and the Communities do not assign error based on RCW 36.70A.010. Additionally, the Communities did not raise arguments before the Board based on RCW 36.70A.011, .020(1), (4), (12), .040(5)(d), or .070(2)-(4), (6). Thus, we do not reach the Communities' argument based on these GMA provisions.

B. RCW 36.70A.130(1)(D) – CONFORMANCE WITH THE GMA REQUIREMENTS AND CONSISTENCY WITH THE COMPREHENSIVE PLAN

The Communities assign error to the Board's conclusion that the Communities failed to show that the County violated RCW 36.70A.130(1)(d). The Communities argue that because the County allegedly failed to evaluate amendment M-2 as required by former PCC 19C.10.065(A), the County violated RCW 36.70A.130(1)(d). We disagree.

---

36.70A.040(5)(d) (counties "shall adopt a comprehensive land use plan and development regulations that are consistent with and implement the comprehensive plan"); RCW 36.70A.070(2)-(4), (6) (comprehensive plan mandatory elements, specifically housing, capital facilities, utilities, and transportation).

RCW 36.70A.130(1)(d) is the only GMA provision under which the Communities preserved an argument related to the County's evaluation of amendment M-2 under former PCC 19C.10.065(A). RCW 36.70A.130(1)(d) provides that

[a]ny amendment of or revision to a comprehensive land use plan shall conform to [the GMA]. Any amendment of or revision to development regulations shall be consistent with and implement the comprehensive plan.

However, the GMA establishes "a presumption of validity for comprehensive plans and development regulations," *Kittitas County*, 172 Wn.2d at 155, "and amendments thereto." RCW 36.70A.320(1). The party challenging an amendment to a comprehensive plan or to development regulations has the burden of proving that the County clearly erred. *Kittitas County*, 172 Wn.2d at 156; RCW 36.70A.130(1)(d). Therefore, to establish a violation of RCW 36.70A.130(1)(d), the challenging party must clearly show either that (1) an amendment or revision to the comprehensive plan did not conform to the GMA or (2) an amendment or revision to development regulations was inconsistent with or did not implement the comprehensive plan. *Kittitas County*, 172 Wn.2d at 156; RCW 36.70A.130(1)(d).

Amendment M-2 was an area-wide amendment to the Comprehensive Plan. As such, the second sentence of RCW 36.70A.130(1)(d) does not apply to this case because the Communities do not challenge a development regulation amendment. Instead, the Communities challenge a comprehensive plan amendment and must show that amendment M-2 did not conform to the GMA. RCW 36.70A.130(1)(d).

The Communities cite no authority to support the proposition that a County's alleged failure to adhere to its procedures for amendments to the comprehensive plan violates RCW 36.70A.130(1)(d). It is the Communities' burden to show that the amendment did not conform to

the GMA. *Kittitas County*, 172 Wn.2d at 156; RCW 36.70A.320(2), .130(1)(d). "[B]oards must . . . defer to local planning decisions as between different planning choices that are compliant with the GMA." *Kittitas County*, 172 Wn.2d at 157.

The GMA does not require an evaluation of the eight factors enumerated under former PCC 19C.10.065(A). And the Board concluded that the plain meaning of former PCC 19C.10.065(A) did not "require[] more than a recommendation based on the review" and did not require that a "proposal must necessarily 'satisfy' each and every criterion." CP at 23. The Communities failed to show that the County did not evaluate amendment M-2 as required under former PCC 19C.10.065(A).

Even if the County failed to evaluate amendment M-2 as required by former PCC 19C.10.065(A), the Communities have failed to show that alleged failure means that amendment M-2 to the Comprehensive Plan does not conform to the GMA.

We give "substantial weight to the Board's interpretation of the GMA." *Whatcom County*, 186 Wn.2d at 667. Here, the Board concluded that the Communities failed to show a violation of RCW 36.70A.130(1)(d). We hold that the Board did not err.[12]

IV. SUBSTANTIAL EVIDENCE

The Communities argue that substantial evidence does not support the Board's conclusion that the County evaluated amendment M-2 as required under former PCC 19C.10.065(A). The Communities seem to argue that there is no evidence that PALS evaluated the HRD redesignation

---

[12] As a result, we do not reach the Communities' specific arguments that the County failed to properly evaluate the amendment under former PCC 19C.10.065(A). In any event, the Communities waived their argument on the Board's interpretation of former PCC 19C.10.065(A) by failing to support it with analysis or authority. RAP 10.3(a)(6).

or "facts and evidence" related to the factors under former PCC 19C.10.065(A)(1)-(3), (5), and (7)-(8). Br. of Communities at 17.

## A. BURDEN OF PROOF

The Board concluded that the Communities did not show by clear error "that the County failed to evaluate . . . amendment [M-2] as required by [former] PCC 19C.10.065[(A)]." CP at 24; *Kittitas County*, 172 Wn.2d at 156 (parties challenging a comprehensive plan amendment may rebut the presumption of validity with "evidence that persuades a board that the action is clearly erroneous").

The Communities seem to suggest that the County has the burden of demonstrating that substantial evidence supports the Board's decision. However, the Communities have the burden of showing that substantial evidence did not support the Board's decision. RCW 34.05.570(1)(a).

## B. EVALUATION OF THE AMENDMENT

The Communities argue that substantial evidence does not support the Board's decision because there is no evidence that PALS evaluated the HRD redesignation. They argue that PALS' evaluation of the CC redesignation was insufficient because "the answers to the eight questions provided under [former] PCC 19C.10.065(A)[] would be substantively different depending on whether EC was being redesignated to <u>CC</u> . . . or to [HRD]." Br. of Communities at 22-23. We hold that the Communities' argument fails.

The following evidence indicates that PALS evaluated the HRD redesignation. PALS initial staff report "question[ed] whether a *higher density residential designation* may be more appropriate as a transition into the surrounding neighborhood." CP at 130 (emphasis added). Importantly, that report discussed the eight factors under former PCC 19C.10.065(A). The

Planning Commission noted that PALS would work with MCAC "as part of the Comprehensive Plan update if they want to see [the eight parcels] redesignated to a different designation more appropriate for the site, such as High Density Residential (HRD) . . . implemented with a[] Moderate High Density Residential (MHR) [zone] classification." CP at 168. The Planning Commission noted that the addition of an HRD land use designation and implementing MHR zone classification "was vetted with [the] Economic Development Department." CP at 168. The Planning Commission approved a motion to have PALS "prepare an alternative recommendation to accommodate high density residential development." CP at 169.

PALS then "*reviewed [additional] information* and modified its recommendation for [amendment] M-2" in an errata to its initial staff report. CP at 172 (emphasis added). PALS' modified recommendation was for redesignation of the eight parcels from an EC to an HRD land use designation, along with an implementing MHR zoning classification, "as it would be more appropriate as a transition into the surrounding neighborhood." CP at 173. PALS did not modify the discussion of the eight factors under former PCC 19C.10.065(A) in the errata.

We reject the Communities' challenge because substantial evidence shows that PALS evaluated the HRD designation.

C.      USE OF THE FACTORS TO DEVELOP AN EVALUATION OF THE AMENDMENT

The Communities argue that there is no evidence that the County evaluated the factors under former PCC 19C.10.065(A)(1) or (3). They also argue that there is no evidence that the County evaluated "facts and evidence" related to the factors under former PCC 19C.10.065(A)(2), (5), and (7)-(8). Br. of Communities at 17. We hold that the Communities' argument fails.

Former PCC 19C.10.065(A) provides the following factors shall be considered when evaluating an amendment:

1. Is there a community or countywide need for the proposed amendment? If so, what is that need?
2. Is the infrastructure available to support the requested amendment, such as sewer, water, roads, schools, fire support?
3. Would the requested amendment provide public benefits? If so, what sorts of public benefits?
4. Are there physical constraints on the property?
5. Are there environmental constraints, such as noise, access, traffic, hazard areas on or adjacent to the proposed amendment?
6. What types of land use or activities are located on the property?
7. What types of land use or activities are located on neighboring properties?
8. Is the proposed amendment consistent with all applicable state and local planning policies?

The Board concluded that the plain meaning of former PCC 19C.10.065(A) did not "require[] more than a recommendation based on the review" and did not require that a "proposal must necessarily 'satisfy' each and every criterion." CP at 23. And the plain language of former PCC 19C.10.065(A) requires that PALS evaluate a Council-initiated *amendment*, not the factors or facts related to those factors. Additionally, no one factor is determinative.

Moreover, we do not consider the Communities' argument under each of the factors because they failed to raise those arguments before the Board and thus waived them or they do not support the arguments with authority here. RCW 34.05.554(1) (waiver of arguments not raised before the Board); RAP 10.3(a)(6) ("citations to legal authority" must support an argument).

Based on the foregoing, we hold that the Communities failed to meet their burden of showing that substantial evidence did not support the Board's decision.

## V. ARBITRARY AND CAPRICIOUS ARGUMENT

The Communities assign error to the Board's alleged failure to consider the fact that the eight parcels redesignated by amendment M-2 are adjacent to rural separator designated lands and argue that the Board's decision was arbitrary and capricious as a result. Again, we disagree.

The Board's order is arbitrary and capricious if it "represents 'willful and unreasoning action, taken without regard to or consideration of the facts and circumstances surrounding the action.'" *Kittitas County*, 172 Wn.2d at 155 (quoting *City of Redmond*, 136 Wn.2d at 46-47). "'Where there is room for two opinions, an action taken after due consideration is not arbitrary and capricious even though a reviewing court may believe it to be erroneous.'" *City of Redmond*, 136 Wn.2d at 47 (quoting *Kendall*, 118 Wn.2d at 14).

A petitioner challenging a Board decision must include "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." RAP 10.3(a)(6). "Unsubstantiated assignments of error are deemed abandoned." *Kittitas County*, 176 Wn. App. at 54. "[R]equiring an actual challenge prior to undertaking appellate review avoids 'the danger of an erroneous decision caused by the failure of parties . . . to zealously advocate their position.'" *Clark County v. W. Wash. Growth Mgmt. Hr'gs Bd.*, 177 Wn.2d 136, 144, 298 P.3d 704 (2013) (alteration in original) (quoting *Orwick v. City of Seattle*, 103 Wn.2d 249, 253, 692 P.2d 793 (1984)).

Here, the Communities did not set out a separate section in their brief devoted to the arbitrary and capricious argument. Instead, the Communities merely mention the Board's alleged failure to "consider the Rural Separator community to the south" of the eight parcels in the portion

of their brief addressing PALS' evaluation of former PCC 19C.10.065(A)(7) and (8). Br. of Communities at 25.

The Communities do not allege any facts showing that any failure of the Board to consider the rural separator to the south of the eight parcels was willful. They state only that "[t]o the extent that the Board's decision constitutes a 'willful and unreasoning action' to not consider the Rural Separator community to the south, the Board's decision would also appear arbitrary and capricious." Br. of Communities at 25. The Communities also do not support the argument with authority.

Moreover, the Board did consider the land use south of the eight parcels when it determined that PALS properly evaluated amendment M-2. The Board included a finding in its order that the eight parcels "are immediately north of 121st [Street] E[ast], within the UGA." CP at 14. In the portion of its order discussing other adjacent land uses, the Board cited to the application for amendment M-2, which included a map showing the abbreviations for the rural separator designation and zone classification. During oral argument before the Board, the County also mentioned that a rural separator designated lands abutted the eight parcels to the south.

We hold that the Communities abandoned their arbitrary and capricious argument and they failed to meet their burden of proof on the argument.

In sum, the Board did not err when it concluded that the Communities failed to show that the County did not evaluate amendment M-2 as required by former PCC 19C.10.065(A), and therefore the Communities failed to show that amendment M-2 violated the GMA. Substantial evidence supports the Board's conclusion and its decision was not arbitrary nor capricious.

27

## VI. PUBLIC NOTICE AND PARTICIPATION

The Communities assign error to the Board's conclusion that the County's approval of amendment M-2 complied with the GMA's public notice and participation requirements under RCW 36.70A.020(11), .140, and .035.[13]  However, the Board made no such conclusion.  Because the Communities' argument rests on an incorrect assumption that the Board made a conclusion it did not make, the Communities' argument fails.

The County argues that the Communities waived the issues of public notice and public participation by failing to raise them before the Board.  It argues that it did not have a chance to develop the record to demonstrate that it provided the required public notice and opportunity for public participation.

The Communities reply that interests of justice would be served by reviewing the issue of public notice as provided under RCW 34.05.554(1)(d)(ii).  Alternatively, the Communities argue that this court should review the issue of public notice because they raised it before the Thurston County Superior Court.  They also argue that the issues of public notice and public participation warrant review based on *City of Seattle v. McCready*, 123 Wn.2d 260, 269, 868 P.2d 134 (1994), *Maynard Invest. Co. v. McCann*, 77 Wn.2d 616, 623, 465 P.2d 657 (1970), or RAP 10.6(c) and 12.1(b).

We agree with the County.

---

[13] They also assign error to alleged public notice and participation requirements under RCW 36.70A.130(1)(d), but that provision does not discuss public notice and participation.

A. RCW 34.05.554(1)(d)(ii)

"Issues not raised before [the Board] may not be raised on appeal." RCW 34.05.554(1). An exception exists if "[t]he interests of justice would be served by resolution of an issue arising from: . . . [a]gency action occurring after the person exhausted the last feasible opportunity for seeking relief from the agency." RCW 34.05.554(1)(d)(ii).

Here, the Communities seem to argue that the Board's one question about public notice during argument satisfied the requirements of RCW 34.05.554(1)(d)(ii). It did not. The County's alleged failure to provide notice, happened *before* the Communities filed their petition with the Board. Thus we cannot conclude that the public notice issue arose from an action *after* the Communities had "exhausted the last feasible opportunity for seeking relief" from the Board. RCW 34.05.554(1)(d)(ii).

Therefore, we decline to extend the exception to the general rule under RCW 35.05.554(1)(d)(ii) to this case.

B. ISSUES RAISED BEFORE THE THURSTON COUNTY SUPERIOR COURT

"On appeal, we review 'the *Board's* decision, not the decision of the superior court.'" *Feil*, 172 Wn.2d at 376 (quoting *King County*, 142 Wn.2d at 553). Our review is limited to "'the record made before the Board.'" *Feil*, 172 Wn.2d at 376 (internal quotation marks omitted) (quoting *King County*, 142 Wn.2d at 553). We hold that the Communities' argument that they preserved the issue of public notice by raising it before the Thurston County Superior Court is meritless.

### C. ISSUES NECESSARY TO A DECISION

The Communities rely on *McCready*, 123 Wn.2d at 269,[14] to argue that this court should review the otherwise waived issues of public notice and public participation because they are necessary. In *McCready*, our Supreme Court noted that "[o]rdinarily, the failure of the parties to raise an issue would preclude its examination." 123 Wn.2d at 269. However, the court recognized that appellate courts have "discretionary authority to reach" such issues "if the parties ignore a constitutional mandate, a statutory commandment, or an established precedent" that is "necessary for decision." *McCready*, 123 Wn.2d at 269. The Communities do not analyze whether "the parties ignore[d] a constitutional mandate, a statutory commandment, or an established precedent." *McCready*, 123 Wn.2d at 269. Therefore, we decline to extend the exception to the general rule announced in *McCready* to this case.

### D. ISSUES AFFECTING THE PUBLIC INTEREST

The Communities also cite to *Maynard*, 77 Wn.2d at 622-23, for the proposition that this court may review the issues of public notice and public participation because they "'affect[ ] the public interest.'" Amended Reply Br. of Communities at 18 (quoting *Maynard*, 77 Wn.2d at 622). In *Maynard*, our Supreme Court stated that the "ordinary rule" is that "errors not raised below will not be considered on appeal." 77 Wn.2d at 621. The court recognized an exception to that rule, where the issue "affects the public interest" and involves "the present welfare of the people at

---

[14] The Communities also cite to *Hall v. American National Plastics, Inc.*, 73 Wn.2d 203, 205, 437 P.2d 693 (1968) (permitting courts to reach otherwise waived issues that are "determinative" and "crucial"), and *Conrad v. University of Washington*, 119 Wn.2d 519, 527-28, 834 P.2d 17 (1992) (permitting otherwise waived due process claims). However, the Communities fail to explain how those cases are analogous to this case.

large, or a substantial portion thereof." 77 Wn.2d at 622. The Communities do not argue that the issues of public notice and the opportunity for public participation in this case involve the public interest and present welfare of the public at large. Therefore, we decline to extend the exception to the general rule announced in *Maynard* to this case.

### E. RULES OF APPELLATE PROCEDURE

The Communities rely on RAP 10.6(c) and 12.1(b) to argue that this court should review the otherwise waived issues of public notice and public participation because they are "important to proper adjudication." Amended Reply Br. of Communities at 18.

RAP 10.6(c) provides that appellate courts "may ask for an amicus brief at any stage of review." The rule does not apply to this case.

RAP 12.1(b) provides that an appellate court may provide an opportunity for supplemental briefing if the court "concludes that an issue which is not set forth in the briefs should be considered to properly decide a case." We do not consider the issues of public notice and public participation to be necessary to properly decide this case because even with supplemental briefing, our review is limited to "'the record made before the Board.'" *Feil*, 172 Wn.2d at 376 (internal quotation marks omitted) (quoting *King County*, 142 Wn.2d at 553). Because the County did not have an opportunity to develop the record made before the Board on those issues, we decline to request supplemental briefing.

In conclusion, because the Communities have failed to demonstrate that an exception to the general rule of waiver applies, we hold that the Communities have waived the issues of public notice and public participation by failing to raise them below.

VII.  TIMELINESS OF COMPREHENSIVE PLAN AMENDMENTS

The Communities assign error to the Board's conclusions that the County's approval of amendment M-2 complied with the statutory deadline under RCW 36.70A.130(5)(a).  However, the Board made no such conclusion.

The Board concluded that (1) the Communities "did not allege a violation of [RCW] 36.70A.130(5)(a)"[15] and (2) if they had, "the allegation [wa]s essentially a failure to act challenge and moot at [the] time as the County ha[d] completed its update."  CP at 24.  Again, because the Communities' argument rests on a conclusion that the Board did not make, their argument fails.

As to the conclusion that the Board did make, the Communities argue that the failure to act challenge was not moot because the County did not provide public notice or an opportunity for public participation as required under the GMA.  The Communities did not assign error to the Board's conclusions that (1) the Communities failed to state a RCW 36.70A.130(5)(a) claim or (2) the Communities were instead raising a failure to act challenge.  The Communities also argue that substantial evidence did not support the Board's decision on RCW 36.70A.130(5)(a) because the County did not revise the Comprehensive Plan before the June 30 deadline.  These arguments fail.

"A case is moot if a court can no longer provide effective relief."  *Orwick*, 103 Wn.2d at 253.  Under the GMA, the only relief the Board may provide is "a finding of noncompliance'" or "'a finding of invalidity.'"  *Whatcom County*, 186 Wn.2d at 694 (quoting *Town of Woodway v. Snohomish County*, 180 Wn.2d 165, 174, 322 P.3d 1219 (2014)); RCW 36.70A.300(3)(b), .302.

---

[15] To state a claim for a County's failure to review and revise a comprehensive plan before the June 30, 2015 deadline under RCW 36.70A.130(5)(a), a party must allege that the legislature "adopted or substantively amended [an underlying GMA provision] since the previous [version of the] comprehensive plan was adopted or updated." *Thurston County*, 164 Wn.2d at 344; *see Save Our Scenic Area v. Skamania County*, 183 Wn.2d 455, 466-67, 352 P.3d 177 (2015).

The County had to review and, if necessary, update its comprehensive plan and development regulations by June 30, 2015. RCW 36.70A.130(5)(a). A party must support its assignments of error with argument and authority. RAP 10.3(a)(6). "Unsubstantiated assignments of error are deemed abandoned." *Kittitas County*, 176 Wn. App. at 54.

The Communities do not argue that the Board can still provide effective relief for the County's failure to review and revise its Comprehensive Plan by the deadline. And the Communities waived any argument based on public notice or an opportunity for public participation by failing to raise those issues before the Board. RCW 34.05.554(1). Even if the Communities had preserved those arguments, they provide no argument or authority explaining how the Board could provide effective relief for the County's alleged failure to make revisions by the June 30 deadline. Therefore, we hold that the Board did not err when it concluded that the Communities' challenge under RCW 36.70A.130(5)(a) was moot.

## VIII. SUBSTANTIAL PREJUDICE

The Communities assign error to the Board's conclusion that the County's approval of amendment M-2 did not substantially prejudice them. This assignment of error fails.

A petitioner challenging a Board decision must include "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." RAP 10.3(a)(6). "Unsubstantiated assignments of error are deemed abandoned." *Kittitas County*, 176 Wn. App. at 54.

The portion of the Communities' brief addressing prejudice does not explain why they are addressing the issue of prejudice and does not cite to any authority. We hold that the Communities have abandoned the assignment of error based on substantial prejudice.

## IX. Conclusion

We presume that local planning actions are valid under the GMA. The Communities failed to show that the County's alleged failure to adhere to former PCC 19C.10.065(A) resulted in an amendment M-2 that was inconsistent with the GMA. We hold that the Board did not err as a matter of law, that its order was supported by substantial evidence, and that the Board's decision was not arbitrary nor capricious.

Further, we hold that the Communities waived their public notice and public participation arguments by failing to raise them before the Board. They did not show that any exception to the waiver rule applies. The Communities also did not show that the Board erred in concluding that the Communities' claim regarding the County's alleged failure to review and revise the Comprehensive Plan by the GMA deadline was moot. Finally, the Communities failed to support their substantial prejudice argument with authority or facts. For these reasons, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

WORSWICK, P.J.

MELNICK, J.